Docket Nos. 19-2073 & 19-3582

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

MARJORIE M. GILLESPIE, et al.,

*Plaintiffs-Appellants*,

v.

LORI DRING and NANCY ASARO

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
No. 3:15-cv-950 (Hon. Matthew W. Brann)

_____

## BRIEF OF APPELLANTS MARJORIE M. GILLESPIE, ET AL.

**OLIVER PRICE & RHODES**

Joseph A. O'Brien (Id. No. 22103)
Jenna Kraycer Tuzze (Id. No. 324116)
1212 South Abington Road
P.O. Box 240
Clarks Summit, PA 18411
Phone:  (570) 585-1200
Fax:  (570) 585-5100
jaob@oprlaw.com
jmk@oprlaw.com

**STEVENS & LEE, P.C.**

Thomas I. Vanaskie (Id. No. 29063)
Peter J. Adonizio, Jr. (Id. No. 325990)
425 Spruce Street
Suite 300
Scranton, PA 18503
Phone:  (570) 969-5360
Fax:  (570) 371-7360
tiv@stevenslee.com
pja@stevenslee.com

*Attorneys for Plaintiffs-Appellants Marjorie M. Gillespie, et al.*

iv

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................................ iv

STATEMENT OF THE ISSUES PRESENTED ................................................. vii

RELATED CASES AND PROCEEDINGS ....................................................... viii

STATEMENT OF THE CASE .............................................................................. 1

    A.  The History of Lake Ariel And Ownership of Property Along the Western Shore .............................................................................................. 1

    B.  The 1999 Litigation And The 2006 Settlement Agreement ...................... 5

    C.  The West Shore Property Owners Perform Under The 2006 Settlement Agreement, But Dring And ALO Do Not .............................. 10

    D.  Dring's Claim For Breach Of The 2006 Settlement Agreement .............. 11

    E.  The West Shore Property Owners' Claim For Breach Of The 2006 Settlement Agreement ............................................................................. 12

SUMMARY OF THE ARGUMENT ................................................................... 16

ARGUMENT ....................................................................................................... 20

    A.  This Court Reviews The District Court's Grant Of Summary Judgment De Novo ...................................................................................... 20

    B.  The Doctrine Of Futility Is Not A Valid Basis To Excuse Dring's Failure To Grant the West Shore Property Owners An Easement Over The North Strip .................................................................................. 20

    C.  The West Shore Property Owners Effectively Hold An Easement As A Matter Of Law Over The North Strip Based On Dring And The West Shore Property Owners' Mutual Release Of Claims In The 2006 Settlement Agreement ............................................................. 24

    D.  Dring Is Not The Prevailing Party Under The 2006 Settlement Agreement And Thus Should Not Be Entitled To Attorneys' Fees ......... 28

CONCLUSION .................................................................................................... 32

# TABLE OF AUTHORITIES

**Cases**

*Ariel Land Owners, Inc. v. Dring*,
    374 F. App'x 346 (3d Cir. 2010) ....................................................................3, 10

*Ariel Land Owners, Inc. v. Dring*,
    No. CIV.A. 3:01-CV-0294, 2005 WL 2416123 (M.D. Pa. Sept. 30,
    2005) ...................................................................................................................5

*Ariel Land Owners, Inc. v. Dring*,
    No. CIV A 3:CV-01-0294, 2008 WL 189644 (M.D. Pa. Jan. 18,
    2008), *amended on reconsideration in part*, No. CIV. A. 3:CV-01-
    0294, 2008 WL 3837482 (M.D. Pa. Aug. 13, 2008) ..............................3–4, 6, 10

*Beckwith Mach. Co. v. Travelers Indemn. Co.*,
    815 F.2d 286 (3d Cir. 1987) .................................................................................v

*Brown v. Bd. of Educ. of Topeka, Kan.*,
    349 U.S. 294 (1955).............................................................................................28

*Cape May Greene, Inc. v. Warren*,
    698 F.2d 179 (3d Cir. 1983) ...............................................................................iv

*Catlin v. United States*,
    324 U.S. 229 (1945) ............................................................................................iv

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949) .............................................................................................v

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978)............................................................................................iv

*Cordero v. Potomac Ins. Co. of Ill.*,
    794 A.2d 897 (Pa. Super. Ct. 2002).....................................................................29

*Dring v. Ariel Land Owners, Inc.*,
    782 F. App'x 133 (3d Cir. 2019) ........................................................................12

*Erkess v. Eisenthal*,
    47 A.2d 154 (Pa. 1946) ......................................................................................21

iv

*Gardner v. Clark*,
   33 Pa. D. & C.3d 662 (Phila. Ct. Com. Pl. 1985)...............................................30

*Gillespie v. U.S. Steel Corp.*,
   379 U.S. 148 (1964) ............................................................................................iv

*Greenblatt v. Budd Co.*,
   666 F. Supp. 735 (E.D. Pa. 1987).......................................................................18

*Gustine Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc.*,
   892 A.2d 830 (Pa. Super. Ct. 2006)....................................................................28

*In re Grand Jury Proceedings (U.S. Steel-Clairton Works)*,
   525 F.2d 151 (3d Cir. 1975) .................................................................................v

*Lori Dring and Nancy Asaro v. Ariel Land Owners, Inc.*,
   No. 3:15-cv-00478, 2018 WL 3934683 (M.D. Pa. Aug. 16, 2018) .......11–12, 21

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993)............................................................................................28

*Profit Wize Mktg. v. Weist*,
   812 A.2d 1270 (Pa. Super. Ct. 2002)............................................................29–30

*St. Joseph's Ctr. v. Workers Comp. Appeal Bd.*,
   2062 C.D. 2010, 2011 WL 10857850 (Pa. Commw. Ct. Aug. 23,
   2011) ...................................................................................................................18

*Steele v. Cicchi*,
   855 F.3d 494 (3d Cir. 2017) ...............................................................................20

*True R.R. Assocs., L.P. v. Ames True Temper, Inc.*,
   152 A.3d 324 (Pa. Super. Ct. 2016)....................................................................26

*Widmer Eng'g, Inc. v. Dufalla*,
   837 A.2d 459 (Pa. Super. Ct. 2003).............................................................25–26

*Zavatchen v. RHF Holdings, Inc.*,
   907 A.2d 607 (Pa. Super. Ct. 2006)....................................................................30

## Statutes, Rules & Regulations

28 U.S.C. § 1291 .............................................................................................. iii–iv

28 U.S.C. § 1332 .................................................................................................... iii

Fed. R. Civ. P. 41 ......................................................................................19, 31–32

Fed. R. Civ. P. 56 .................................................................................................. 20

Fed. R. Civ. P. 60 .................................................................................................. iii

**Other Authorities**

1 J. Pomeroy, Equity Jurisprudence § 181, 5th ed. ................................................ 28

Black's Law Dictionary, 6th ed., 11th ed. ............................................................... 29

Merriam Webster's Collegiate Dictionary, 7th ed. .................................................. 29

Restatement (Second) of Contracts § 253(2) ..................................................22, 26

## JURISDICTIONAL STATEMENT

The District Court exercised diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332.  However, diversity jurisdiction did not exist when the action was commenced, a fact that was evident on the face of the Complaint.  As detailed in Appellants Marjorie M. Gillespie, et al.'s (collectively, the "**West Shore Property Owners**") Motion for Relief from Judgment under Fed. R. Civ. P. 60(b)(4), at the time this action was brought, one of the plaintiffs was a citizen of the same state (New Jersey) as both defendants, a fact that was not discovered until after new counsel was retained to represent the West Shore Property Owners in the summer of 2020.  [*See* App. 4691–4700, West Shore Property Owners' Rule 60(b)(4) Motion and supporting Brief].

Assuming, but without conceding, that the District Court properly had diversity jurisdiction, this Court has appellate jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final decision by the District Court, notwithstanding the fact that Appellees Lori Dring and Nancy Asaro's (collectively, "**Dring**") trespass claim against the West Shore Property Owners was dismissed without prejudice pursuant to a stipulation of counsel.  This Court requested, and the parties filed, Responses in both appeals regarding the finality of the District Court's October 10, 2018 Order and October 17, 2019 Order, whereby

iv

all parties assert that the District Court's orders are appealable under 28
U.S.C. § 1291.

"[P]ractical, not technical considerations are to govern the application of
principles of finality." *Cape May Greene, Inc. v. Warren*, 698 F.2d 179, 185 (3d
Cir. 1983) (citing *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152 (1964)). It is
axiomatic that a final order "ends the litigation on the merits and leaves nothing for
the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437
U.S. 463, 467 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).
The District Court has entered judgment against the West Shore Property Owners
on all of their claims; Dring's counterclaim for trespass was dismissed without
prejudice; and Dring's request for attorneys' fees and costs has been granted.
Practically speaking, the District Court has entered final judgment.

First, the parties and the Court have treated the litigation as if it is final and
complete. An issue on appeal is the grant of attorneys' fees to Dring as the
"prevailing party" under a settlement agreement. Second, Dring could
theoretically impede the West Shore Property Owners' ability to file an appeal of
both the October 10, 2018 and October 17, 2019 Orders indefinitely, by simply
never refiling their counterclaim for trespass.

Third, the Third Circuit has held that "when the award of attorney's fees
arises out of and is part of the claimant's cause of action and is not separately

v

authorized by a statute providing for such an award, an award does not become

final until the attorney's fees are quantified." *Beckwith Mach. Co. v. Travelers*

*Indem. Co.*, 815 F.2d 286, 290 (3d Cir. 1987). In *Beckwith*, the Court concluded

that:

> a merits order cannot vest us with jurisdiction when it also
> provides for attorney's fees, not yet quantified, which fees
> were part of and arose out of the cause of action but were
> not separately authorized by statute. The time for appeal
> in such a case is to be measured from the entry of the order
> ultimately quantifying the outstanding fee issue.

*Id.* at 291 (footnote omitted). Here, Dring's entitlement to attorneys' fees arises

from a settlement agreement between the parties, not from statutory authorization.

And the District Court quantified those fees at $282,393.93. Thus, the District

Court's Order should be deemed final. Accordingly, under a "practical rather than

a technical construction," of finality, this Court has jurisdiction over the West

Shore Property Owners' appeals.[1] *In re Grand Jury Proceedings (U.S. Steel-*

*Clairton Works)*, 525 F.2d 151, 155 (3d Cir. 1975) (citing *Cohen v. Beneficial*

*Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

---

[1] Under a technical construction of finality, this Court would lack jurisdiction because Dring's trespass claim, based as it is on the same facts that existed at the time this action was brought, has not been adjudicated and Dring continues to threaten to bring a trespass action. Thus, if the West Shore Property Owners do not prevail on the merits in this appeal, additional litigation is likely.

## STATEMENT OF THE ISSUES PRESENTED

Whether the District Court erred by holding that Dring's contractual obligation to deed an easement to the West Shore Property Owners over the northern part of the western shore of Lake Ariel ("**North Strip**" of the "**West Shore Strip**") was excused due to the Ariel Land Owners, Inc.'s ("**ALO**") non-performance of its duty to grant Dring a permanent easement over property known as Cardinal Lane. [App. 948–54].

Whether the District Court erred by failing to hold as a matter of law that the West Shore Property Owners had an easement over the North Strip because, through the Settlement Agreement, the West Shore Property Owners released their claims to a prescriptive easement over the North Strip while Dring simultaneously released their claims for trespass over the North Strip and agreed to dismiss their trespass claim with prejudice. [App. 955–66].

Whether the District Court erred by awarding attorneys' fees to Dring when they were not the prevailing party under the Settlement Agreement. [App. 5090–93].

vii

## RELATED CASES AND PROCEEDINGS

This case involves two consolidated appeals:  *Marjorie M. Gillespie, et al., v. Lori Dring and Nancy Asaro*, No. 19-3582, and No. 19-2073.  These appeals are related to another appeal pending before this Court, *Lori Dring, et al. v. Ariel Land Owners, Inc.*, No. 20-2080, an appeal pending from a case directly related to the parties and issues here.

## STATEMENT OF THE CASE

### A.  THE HISTORY OF LAKE ARIEL AND OWNERSHIP OF PROPERTY ALONG THE WESTERN SHORE

This case stems from a decades-old dispute over property rights at Lake Ariel in Wayne County, Pennsylvania.  On the one side of the dispute are two separate parties: (1) ALO, the corporation that owns the land under Lake Ariel and whose shareholders are mostly owners of properties on the east side of Lake Ariel; and (2) the West Shore Property Owners, a group of individuals who own or lease from ALO homes along the western shore of Lake Ariel.  On the other side of the dispute is Dring, who owns approximately eighty-nine (89) acres of land near the western shore of Lake Ariel. Dring is also the fee simple owner of a narrow strip of land that has been referred to as the "West Shore Strip."  This narrow band of land, approximately 2 ½ feet wide, is situated between the high and low water marks of Lake Ariel along the western shore of Lake Ariel, between the West Shore Property Owners' land and the ALO lake.   A map of Lake Ariel depicting the West Shore properties owned by the West Shore Property Owners, the West Shore Strip, and Dring's property is set out below.

1



DEACON HILL RD

RAMBLE RD

LAKE ARIEL HWY

MAPLE AVE

GOLF PARK DR

STOCK FARM RD

West Shore Strip

LAKE TOWNSHIP

LAKE ARIEL HWY

West Shore Property Owners Properties

W SHORE DR

West Shore Strip

COVE POINT LN

ISLAND VIEW DR

Dring Properties

West Shore Strip

BLUEBIRD LN

CARDINAL LN

WILLOW LN

Mud Pond

Located approximately 20 miles southeast of Scranton, Pennsylvania, Lake Ariel (previously known as "Jones Pond") is a stream and spring fed lake in Wayne County, Pennsylvania. Covering approximately 240 surface acres, Lake Ariel is connected by a narrow channel to a much smaller enclosed body of water known as "Mud Pond" (previously known as "Marsh Pond").

Generations of northeast Pennsylvania families have owned vacation and/or permanent homes at the lake, and have used and enjoyed the waters of the lake for recreation. For example, the family of the former Governor of Pennsylvania, Robert P. Casey, had lakefront property on Lake Ariel.

Title to the land under Lake Ariel can be traced back to 1801, when the Sheriff of Wayne County deeded land under and near the lake to Edward Tilghman. *See Ariel Land Owners, Inc. v. Dring*, No. CIV A 3:CV-01-0294, 2008 WL 189644, at *12 (M.D. Pa. Jan. 18, 2008), *amended on reconsideration in part*, No. CIV. A. 3:CV-01-0294, 2008 WL 3837482 (M.D. Pa. Aug. 13, 2008), *and aff'd*, 374 F. App'x 346 (3d Cir. 2010). In the 1820s, the Tilghman family conveyed property under the lake and along its western shores to the Cadwalder family. *Id.* at *2. In 1859, George Cadwalder conveyed a large tract of property along the western shore to Edward Weston. *Id.* In 1862, Weston conveyed ownership of most of this property to three individuals: William Jones, Joel Jones, and Jeremiah Barnes. *Id.* at *2–5, 13–14. Significant to this enduring dispute, the

3

three deeds of conveyance created a reservation in Weston of all land between the high-water mark and natural margin of Lake Ariel along the western shore (i.e. – the West Shore Strip).[2] *Id.*   Title to the West Shore Strip remained in the Weston family until 1947, when Charles Weston, grandson of Edward Weston, passed away.  The West Shore Strip was not specifically bequeathed by Charles Weston, but passed instead through the residuary clause of his will to Wells College, Aurora New York (one-third of residual estate) and Rensselaer Polytechnic Institute, Troy, New York (two-thirds of residual estate) (collectively, the "**Colleges**").  *Id.* at \*14.

In 1964, ALO obtained title to the land under Lake Ariel by deed from A.J. Schrader.  *Id.* at \*12.  ALO is a Pennsylvania corporation that owns and manages Lake Ariel.  Many of its shareholders own properties at Lake Ariel, primarily on the East Side of the lake.

For over 20 years, ALO managed the lake without major issue.  That all changed when Joseph Asaro, father of, and predecessor in interest to, Joseph Asaro's daughters (collectively, "Dring"), purchased land on the eastern side of Lake Ariel, near Mud Pond in the 1980s.  Initially, ALO challenged the Asaro family's use of Mud Pond and Lake Ariel for motorized boating purposes.  In

---

[2] It is believed that the West Shore Strip was intended to enable cattle to access the lake and to harvest ice in the winter.

4

1996, after litigation between Mr. Asaro and ALO regarding lake access rights was concluded, Mr. Asaro's daughters (Dring) purchased 52 acres of land on the western side of Lake Ariel, adjacent to Mud Pond, from Robert Swingle. *See Ariel Land Owners, Inc. v. Dring*, No. CIV.A. 3:01-CV-0294, 2005 WL 2416123, at \*5–6 (M.D. Pa. Sept. 30, 2005).   In 1998, Dring obtained a "Corrective Deed" from Swingle, purporting to convey title to land between the land conveyed in 1996 and the margin of the lake. *Id.*  In 2001, Dring purchased an additional 38 acres of land from Swingle. *Id.*  The Asaro/Dring family's attempts to use Lake Ariel for boating purposes and their desire to develop the former Swingle farm for residential purposes resulted in decades of litigation.

## B.  THE 1999 LITIGATION AND THE 2006 SETTLEMENT AGREEMENT

The litigation history underlying this dispute began in 1999, when ALO filed a quiet title action related to the West Shore Strip (the "**1999 Litigation**").   Dring removed the quiet title action to federal court, and joined the West Shore Property Owners as counterclaim defendants, asserting a claim for trespass.  During the course of the 1999 Litigation, Dring obtained title to the West Shore Strip from the Colleges.  Specifically, Rensselaer Polytechnic Institute conveyed its two-thirds interest in the West Shore Strip to Dring on November 2, 2001, and Wells College conveyed its one-third interest in the West Shore Strip to Dring on December 6,

5

2001.[3]  Dring paid approximately $25,000 for the West Shore Strip.  Dring's Third

Amended Counterclaim alleged that the West Shore Property Owners continuously

trespassed on the West Shore Strip and sought to eject the West Shore Property

Owners from the West Shore Strip.  *See generally*, *Ariel Land Owners, Inc.*, 2008

WL 189644.

    This case proceeded to a non-jury trial in August of 2006.  During the

middle of trial, the parties reached a *partial* settlement (the "**2006 Settlement**

**Agreement**").  This settlement was intended to grant Dring limited rights to access

Lake Ariel for boating purposes and to give the West Shore Property Owners a

permanent easement across the northern half of the West Shore Strip, referred to as

the "North Strip".  The 2006 Settlement Agreement included mutual releases.

---

[3] Significantly, both Colleges' deeds of conveyance included restrictive covenants that prevent Dring from using the conveyance to the detriment of the West Shore Property Owners.  The deeds provided:

> By acceptance of this Deed, the Grantee [Dring] covenants that it will not, without the prior written consent of the Grantor, sell, assign, gift, bequest or transfer in any manner its interest in the real property conveyed hereunder to any person or entity, *if such transfer would adversely affect any adjoining property owners or property owners along the same side of the Lake as the parcel conveyed hereunder* [i.e., the West side] or the Lake/Homeowners Association. An adverse effect would be created (but is not limited to the following examples) if the Grantee transfers the parcel conveyed herein for any sum of money larger than the price paid to the Grantor *or by prohibiting physical access to the Lake*. This restriction shall be binding upon any subsequent Grantee. The Grantor herein and its successors or assigns or designees shall have the sole right to enforce, grant relief from, or dissolve this restriction.  (Emphasis added.)

6

Specifically, ALO and Dring released certain claims against each other.[4] And the West Shore Property Owners and Dring released "any and all" claims against each other, with Dring explicitly releasing their trespass claims against the West Shore Property Owners, including their successors and assigns, and the West Shore Property Owners releasing their claims for an easement by prescription over the West Shore Strip.[5]  Consistent with the intent to resolve forever the trespass claims, the 2006 Settlement Agreement provided that all claims against the West Shore Property Owners would be dismissed with prejudice.  [App. 88–89, 2006

---

[4] Section 7 of the 2006 Settlement Agreement provides:

> ALO on the one hand; and Dring/Asaro on the other hand do hereby release any and all claims against the other party and such party's predecessors in title, successors and assigns relating to the North Strip and ALO maintaining the water level of Lake Ariel, Mud Pond or the channel connecting them up to an elevation of 1,425.9 feet above sea level, including but not limited to claims for compensatory damages, punitive damages, trespass, attorneys['] fees or costs of court concerning these issues.  [App. 88, 2006 Settlement Agreement § 7.]

The practical import of this provision is that ALO has the right to adjust the level of Lake Ariel, with the low level being set in the winter months, and the high level mark being achieved for the summer months.

[5] Paragraph 6 of the 2006 Settlement Agreement provides:

> [The West Shore Property Owners] on the one hand; and Dring/Asaro on the other hand do hereby release the other party and such party's predecessors in title, successors and assigns from any and all claims arising out of or relating to the Lawsuit and the West[] Shore Strip including but not limited to claims for compensatory damages, punitive damages, trespass, attorneys[']fees, or costs of court.  [App. 88, 2006 Settlement Agreement § 6.]

The practical import of these mutual releases is to give the West Shore Property Owners, their successors and assigns the right to use the West Shore Strip without interference from Dring.

Settlement Agreement § 9 ("[a]ll claims against the [West Shore] Property Owners set forth in the Third Amended Counterclaim will be dismissed with prejudice.")].

Pursuant to the 2006 Settlement Agreement, Dring was obligated to subdivide the West Shore Strip into North and South Strips, with the North Strip being along the West Shore of Lake Ariel and the South Strip being along Mud Pond.[6] Dring further agreed to execute and deliver to ALO a quitclaim deed to the North Strip (i.e. – the northern part of the West Shore Strip), subject to a permanent easement over the North Strip in favor of the West Shore Property Owners.[7] Thus, the 2006 Settlement Agreement contemplated a grant of an

---

[6] Section 2 of the 2006 Settlement Agreement provides:

> Dring/Asaro agree to subdivide the strip of land along the western shore of Lake Ariel which was acquired by deed from Wells College dated December 6, 2001 and from Rensselaer Polytechnic Institute dated November 2, 2001 (the "West[] Shore Strip") along the southerly property line of Lot 48, Block owned by Maryanne Gillespie as shown on the Tax Map No. 12-03 for Lake Township, Wayne County, PA which was marked for identification as Exhibit DT-70 in the Lawsuit. That portion of the West[] Shore Strip north of the subdivision line is hereafter called the North Strip, and that portion of the West[] Shore Strip south of the subdivision line is called the South Strip. [App. 86, 2006 Settlement Agreement § 2].

[7] Section 3 of the 2006 Settlement Agreement provides:

> Dring/Asaro agree to execute and deliver to ALO a quit claim deed of all of their right, title and interest in and to the North Strip, subject to a permanent easement to be granted in favor of [the West Shore Property Owners] for access over the North Strip and to maintain docks and/or boathouses on the North Strip. This permanent easement is not intended to grant [the West Shore Property Owners] any rights in or over any lands owned by ALO, or any interest in Lake Ariel owned by ALO. The conveyance shall be made for nominal consideration, and the Grantee shall be responsible to execute the Affidavit of Value and record the deed. Dring/Asaro warrant and represent that they have not permitted any

8

easement *from Dring* in favor of the West Shore Property Owners.  The easement

in favor of the West Shore Property Owners is consistent with the understanding

that Dring's release of trespass claims against the West Shore Property Owners and

their successors and assigns had the effect of granting the West Shore Property

Owners an easement over the West Shore Strip.  The 2006 Settlement Agreement

required *ALO* to grant Dring a permanent easement over a separate parcel of

property known as Cardinal Lane.[8]

After the execution of the 2006 Settlement Agreement, the West Shore

Property Owners had effectively no involvement in the 1999 Litigation, because,

as explicitly stated in the 2006 Settlement Agreement, "[a]ll claims against the

[West Shore] Property Owners set forth in the Third Amended Counterclaim will

be dismissed with prejudice."  [App. 88–89, 2006 Settlement Agreement § 9].  And

the only claim against the West Shore Property Owners in the Third Amended

Counterclaim was a claim for trespass over the West Shore Strip.

---

mortgages or other liens on the North Strip, and that there are no outstanding
judgments against them.  [App. 86, 2006 Settlement Agreement § 3].

[8] Section 5 of the 2006 Settlement Agreement provides:

ALO shall execute and deliver to Dring/Asaro instruments of conveyance, in
recordable form, which transfer to Dring/Asaro the following . . . (b) A
permanent easement over the water and a parcel of land at the eastern shore of
Lake Ariel, at the end of Cardinal Lane (the "Dock Area") described as a
rectangular shape of approximately thirty (30') feet in width along the shoreline,
and two hundred (200') feet in depth above the shoreline.  [App. 86–88, 2006
Settlement Agreement § 5].

9

As noted above, the 2006 Settlement Agreement did not result in a complete resolution of the 1999 Litigation.  After a bench trial, the District Court concluded that ALO had acquired title to Lake Ariel and Mud Pond (which the Court held constituted one body of water); that Dring held title to the West Shore Strip (the difference between the natural water level and high water mark of Lake Ariel and Mud Pond); and, that ALO held a prescriptive easement over the West Shore Strip (to raise the water level of the Lake by dam).  *Ariel Land Owners*, 2008 WL 189644, at \*13–16, (1999 Litigation).  This Court, in a non-precedential opinion authored by Judge Nygaard, affirmed the District Court.  *Ariel Land Owners, Inc. v. Dring*, 374 F. App'x 346 (3d Cir. 2010).  Regrettably, the saga did not end there.

## C. THE WEST SHORE PROPERTY OWNERS PERFORM UNDER THE 2006 SETTLEMENT AGREEMENT, BUT DRING AND ALO DO NOT

Through no fault of the West Shore Property Owners, Dring and ALO failed to perform their obligations under the 2006 Settlement Agreement.  At the time of the execution of the 2006 Settlement Agreement, it was believed that ALO had good title to Cardinal Lane, based on the deed ALO had received for the property in 2004 from Swingle, which was properly recorded in Wayne County shortly thereafter.  However, Swingle had previously conveyed the same property to another party, the Culottas, in 2002.  The Court of Common Pleas of Wayne County has since determined that the Culottas, not ALO, have title to Cardinal Lane.

10

Thus, ALO was unable to convey an easement to Dring over Cardinal Lane. Additionally, Dring did not subdivide the West Shore Strip as required by the 2006 Settlement Agreement. Significantly, however, the West Shore Property Owners performed all of their contractual duties under the 2006 Settlement Agreement.

## D. DRING'S CLAIM FOR BREACH OF THE 2006 SETTLEMENT AGREEMENT

On March 10, 2015, Dring filed suit against ALO in the U.S. District Court for the Middle District of Pennsylvania, claiming damages for ALO's alleged breach of the 2006 Settlement Agreement through ALO's failure to provide an easement to Dring over Cardinal Lane (the "**ALO Litigation**"). *See Lori Dring and Nancy Asaro v. Ariel Land Owners, Inc.*, No. 3:15-cv-00478, 2018 WL 3934683, *4 (M.D. Pa. Aug. 16, 2018). On May 14, 2015, ALO filed a counterclaim against Dring for breach of the 2006 Settlement Agreement for Dring's failure to subdivide the West Shore Strip. *Id.* The parties filed cross-motions for summary judgment on October 31, 2016. *Id.*

On August 16, 2018, the Court granted ALO's Motion for Summary Judgment on Dring's single breach of contract claim, holding that: (1) ALO anticipatorily repudiated its contractual obligation to grant Dring an easement over Cardinal Lane; (2) Dring was thereby excused from performing their contractual duty to subdivide the West Shore Strip; and (3) because Dring's performance was a

11

condition precedent to ALO's performance, Dring had no viable basis for a breach of contract claim.  *Id.* at \*8–9.

At the same time, the Court also granted in part Dring's Motion for Partial Summary Judgment on ALO's counterclaim for breach of contract, holding that it would have been futile for Dring "to satisfy the condition precedent," of subdividing the West Shore Strip, because ALO had repudiated its duty to deed Dring an easement over Cardinal Lane.  *Id.*  On August 13, 2019, this Court, in an opinion authored by Judge Fisher, affirmed the Order and Judgment of the trial court.  *See Dring v. Ariel Land Owners, Inc.*, 782 F. App'x 133 (3d Cir. 2019).

## E.  THE WEST SHORE PROPERTY OWNERS' CLAIM FOR BREACH OF THE 2006 SETTLEMENT AGREEMENT

On May 15, 2015, two months after Dring brought suit in federal court, the West Shore Property Owners filed their own complaint against Dring in the U.S. District Court for the Middle District of Pennsylvania, asserting:  (1) breach of contract for Dring's failure to convey to the West Shore Property Owners an easement over the North Strip; and (2) a claim for prescriptive easements over the North Strip.  Dring filed a Motion to Dismiss the West Shore Property Owners' Complaint on July 17, 2015.

On October 6, 2015, the Court granted Dring's motion in part and denied it in part.  Specifically, the District Court:  (1) denied Dring's motion as to the West Shore Property Owners claim for an easement by deed; (2) granted Dring's motion

12

as to the West Shore Property Owners' claims for promissory estoppel and declaratory relief; and (3) ordered the West Shore Property Owners to "file an Amended Complaint to properly plead their claim for a prescriptive easement by virtue of adverse possession (Count IV); otherwise the claim will be **dismissed with prejudice.**"  [App. 273, Oct. 6, 2015 Order (emphasis in original)].

Pursuant to the District Court's Order, the West Shore Property Owners filed a two-count, Amended Complaint on November 24, 2015, asserting a claim for breach of contract and prescriptive easement.  On December 23, 2015, Dring filed an Answer and included a counterclaim against the West Shore Property Owners for trespass over the West Shore Strip.

On April 2, 2018, Dring filed a Motion for Summary Judgment.  On June 4, 2018, the West Shore Property Owners filed a Brief in Opposition to Dring and Asaro's Motion for Summary Judgment.  On October 10, 2018, the District Court granted Dring's Motion for Summary Judgment on both counts of the Amended Complaint.  The District Court granted summary judgment for Dring on the West Shore Property Owners' breach of contract claim, holding that Dring was excused from their obligation to grant an easement to the West Shore Property Owners by virtue of *ALO's* repudiation of its duty to grant Dring an Easement to Cardinal Lane.  [App. 6, Oct. 10, 2018 Memo. at 6].  The District also granted summary judgment for Dring on the West Shore Property Owners' prescriptive easement

13

claim, holding that, pursuant to 2006 Settlement Agreement, *both* the West Shore Property Owners and Dring released "any and all claims arising out of or relating to" the West Shore Strip, including a claim for prescriptive easement.  [App. 7–9, *Id.* at 7–9].  Asserting that "no claims remain," the Court directed the Clerk of Court to close the case.  [App. 10, Oct. 10, 2018 Order].

However, Dring's counterclaim against the West Shore Property Owners did remain pending.  Acting in response to Dring's motion for reconsideration, the District Court directed the Clerk to reopen the case.  On April 20, 2019, the parties executed an Agreement and Release to resolve the question of the finality of the District Court's decision.  The Agreement and Release provided in relevant part that Dring's counterclaim would be dismissed without prejudice and that all claims arising out of any trespass over the West Shore Strip which occurred prior to April 2019 were released.  Based on the Agreement and Release, the parties then entered into a Stipulation, approved by the District Court on April 23, 2019, to dismiss Dring's counterclaim without prejudice.  That Order also stated that Dring's claim for attorneys' fees and costs shall be submitted within thirty days.[9]  The West Shore Property Owners appealed the Court's Order to this Court on May 10, 2019.

---

[9] Paragraph 14 of the 2006 Settlement Agreement provides that the prevailing party in any proceeding involving the interpretation or breach of that agreement "shall be entitled to recover reasonable attorney's fees from the other party."  [App. 89, 2006 Settlement Agreement § 14].

14

The District Court granted Dring an extension of time to file their application for fees and costs, and Dring timely filed their application on June 13, 2019.  On October 17, 2019, the District Court granted Dring's application for attorneys' fees and costs, awarding Dring a total amount of $282,383.93 in fees and expenses.[10]

---

[10] The District Court order on the attorneys' fees did not specify whether the award was against the West Shore Property Owners jointly, severally or jointly and severally.

SL1 1652951v9 114592.00001

## SUMMARY OF THE ARGUMENT

Generations of peaceable enjoyment and use of the beautiful natural resource that is Lake Ariel was shattered when Dring acquired a nearby farm, the Swingle Farm, with plans to develop that property, using Lake Ariel as the magnet to attract purchasers.  As part of their efforts to coerce the owner of Lake Ariel, ALO, into granting Dring rights to use Lake Ariel, Dring, in 2001, obtained title to the 2 ½ foot strip of land along the western shore of Lake Ariel known as the West Shore Strip.  This narrow band of mostly submerged land had passed years before through the residuary clauses of testamentary instruments to two New York colleges, who sold it to Dring for roughly $25,000.  Dring threatened to bar the more than 100 persons living along the West Shore from accessing Lake Ariel. Years of rancorous litigation ensued, with the West Shore Property Owners being the pawns in the battle between Dring and ALO over rights to use Lake Ariel.

Finally, in 2006, peace for the West Shore Property Owners was believed to have been obtained.  Dring agreed to grant the West Shore Property Owners a permanent easement across the 2 ½ foot strip of land.  Both the West Shore Property Owners and Dring mutually released each other "from any and all claims arising out of or relating to the Lawsuit and the West[] Shore Strip including but not limited to claims for compensatory damages, punitive damages, trespass, attorneys[']fees, or costs of court."  [App. 88, 2006 Settlement Agreement § 6].

16

Dring, however, failed to grant the West Shore Property Owners the promised easement due to a dispute with ALO concerning ALO's performance under the 2006 Settlement Agreement, a matter beyond the control of the West Shore Property Owners. Once again, the West Shore Property Owners found themselves as pawns in the fight between Dring and ALO. Once again, the matter ended up in years of rancorous litigation, with the District Court ultimately declining to grant the West Shore Property Owners an easement, either by deed or prescription, because the West Shore Property Owners had released all claims relating to the West Shore Strip in the 2006 Settlement Agreement, and because both Dring and ALO, but not the West Shore Property Owners, had been unable to perform their obligations under the 2006 Settlement Agreement.

The West Shore Property Owners had sought to enlist the equitable powers of the District Court to obtain that which they had been promised in the 2006 Settlement Agreement: an easement across the West Shore Strip. The District Court erred in holding that the West Shore Property Owners were not entitled to enforcement of Dring's contractual obligations to grant them an easement because both ALO and Dring had not performed their reciprocal contractual duties. The doctrine of futility on which the District Court relied has no application in this case, which does not concern whether ALO had anticipatorily repudiated its obligations to Dring. The District Court found that the West Shore Property

17

Owners had performed under the 2006 Settlement Agreement by releasing their claims relating to the West Shore Strip, and equity demands that Dring perform its part by granting the West Shore Property Owners the promised easement.

Also compelling this conclusion is the District Court's finding that the release in paragraph 6 of the 2006 Settlement Agreement is "clear and unambiguous": "[t]he [West Shore] Property Owners on the one hand; and Dring[] on the other hand hereby release the other party . . . from any and all claims arising out of or relating to the Lawsuit and the West[] Shore Strip including but not limited to claims for [damages], trespass, attorneys['] fees, or costs of court." [App. 88]. By releasing their trespass claims against the West Shore Property Owners, their successors and assigns, Dring necessarily relinquished their possessory interest in the North Strip. It would offend principles of fundamental fairness and equity to allow Dring to use the release in paragraph 6 of the 2006 Settlement Agreement as a shield against the West Shore Property Owners claim of a prescriptive easement while denying an obligation to grant them an easement after releasing them from trespass claims. *Cf. Greenblatt v. Budd Co.*, 666 F. Supp. 735, 744 (E.D. Pa. 1987) (applying principles of fundamental fairness and equity to support grant of relief); *St. Joseph's Ctr. v. Workers Comp. Appeal Bd.*, 2062 C.D. 2010, 2011 WL 10857850, at *9 (Pa. Commw. Ct. Aug. 23, 2011) (same).

18

Because judgment should be entered in favor of the West Shore Property Owners, the attorneys' fee award against them should be vacated. Even if this Court does not direct the entry of judgment in favor of the West Shore Property Owners, the attorneys' fee award must be vacated because Dring is not the prevailing party. Dring brought, for the second time, trespass actions against the West Shore Property Owners in 2015. Their first trespass claim was covered by the 2006 Settlement Agreement, and Dring agreed to dismiss that claim with prejudice. Having previously agreed to dismiss their trespass claims, including those for continuing trespass, against the West Shore Property Owners, the stipulation of dismissal without prejudice in this proceeding has the effect of a dismissal with prejudice. *See* Fed. R. Civ. P. 41(a)(1)(B). Because the trespass claim must be regarded as having been adjudicated on the merits adverse to Dring, they are not a prevailing party and the fee award must be vacated.

19

## ARGUMENT

### A. THIS COURT REVIEWS THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT *DE NOVO*

A District Court's grant of summary judgment is subject to *de novo* review.

*See, e.g.*, *Steele v. Cicchi*, 855 F.3d 494, 500 (3d Cir. 2017). Summary judgment is

proper only if the moving party establishes that "no genuine disputes as to any

material fact" exist such that the party is "entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). For the reasons set forth below, this Court should reverse the

District Court's Orders dated October 10, 2018 and October 17, 2019, and enter

judgment as a matter of law in favor of the West Shore Property Owners.

### B. THE DOCTRINE OF FUTILITY IS NOT A VALID BASIS TO EXCUSE DRING'S FAILURE TO GRANT THE WEST SHORE PROPERTY OWNERS AN EASEMENT OVER THE NORTH STRIP

The District Court held that Dring's failure to perform their contractual

obligation to grant the West Shore Property Owners an easement over the North

Strip was excused by ALO's anticipatory repudiation of its obligation to deed

Dring an easement over Cardinal Lane. But ALO's anticipatory repudiation could

not have excused Dring's obligation to perform a *duty owed to the West Shore

Property Owners*.

In an opinion issued in the ALO Litigation, the District Court concluded

that it would have been futile for Dring to perform its contractual duty to subdivide

the West Shore Strip—a condition precedent to ALO's obligation to provide Dring

20

an easement over Cardinal Lane—because ALO had anticipatorily repudiated its performance. *Dring*, 2018 WL 3934623 at \*7. The District Court explained that Dring was "shielded from a claim that [they] breached the Settlement Agreement[,] because it would have been futile to satisfy the condition precedent." *Id.* at \*8. The court reasoned that the "law will not require a person to do a vain and useless act," and noted that Pennsylvania courts "have considered acts 'vain and useless' when they follow repudiation of an agreement." *Id.* at \*7 (citing *Erkess v. Eisenthal*, 47 A.2d 154, 156 (Pa. 1946)). Thus, the District Court concluded that ALO's repudiation discharged Dring's duty to subdivide the West Shore Strip, even though Dring's performance was a condition precedent to ALO's performance. *Id.* at \*8.

At the same time, the District Court granted summary judgment in favor of ALO on Dring's claim for breach of contract against ALO, concluding that "ALO owed no duty to either Plaintiff." *Id.* at \*5. The District Court's logic was that ALO owed no duty to grant Dring an easement over Cardinal Lane because Dring failed to perform the condition precedent of subdividing the West Shore Strip, and Dring owed no duty to ALO to subdivide the West Shore Strip because ALO repudiated its obligation to grant Dring the easement over Cardinal Lane. The District Court used this same reasoning as the basis for its holding that Dring was

21

excused from granting the West Shore Property Owners an easement over the North Strip.  [*See* App. 5–6, Oct. 10, 2018 Memo. at 5–6].

Although the Settlement Agreement was executed on behalf of three parties—Dring, ALO, and the West Shore Property Owners —the District Court held that Dring was excused from deeding the West Shore Property Owners the easement due to *ALO's* repudiation.  "It logically follows that if Dring is excused from subdividing the West[] Shore Strip into the North Strip and South Strip, she is also excused from delivering to ALO a deed to the North Strip subject to an easement to be granted in favor of the [West Shore] Property Owners."  [App. 6, *Id.* at 6].  But the District Court did not explain how ALO's purported repudiation, which excused Dring from subdividing the West Shore Strip, also justified Dring's failure to grant the West Shore Property Owners an easement over the North Strip.

The Restatement (Second) of Contracts § 253(2), cited by the District Court, provides that:  "Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance."  But § 253(2) makes no mention of discharging duties owed to another party under the same contract.  And the District Court did not cite any support for its conclusion that ALO's

22

repudiation excused Dring's performance of *an independent duty Dring owed to the West Shore Property Owners.*[11]

The District Court held that Dring's failure to deed an easement to the West Shore Property Owners was excused under "the constructive condition of exchange," and concluded that "ALO's failure to substantially perform means the implied condition to Dring's duty to perform has not been triggered." [App. 6, Oct. 10, 2018 Memo. at 6]. But Dring owed independent duties to ALO, on the one hand, and to the West Shore Property Owners on the other. The District Court erred by concluding, without support, that the actions of third-party ALO could excuse performance of a contractual duty Dring owed to the West Shore Property Owners.[12] Significantly, the District Court did not find any failure of performance on the part of the West Shore Property Owners. On the contrary, the District Court concluded that Dring received the consideration from the West Shore Property

---

[11] The 2006 Settlement Agreement provides that Dring would "execute and deliver to ALO a quit claim deed of all of their right, title and interest in and to the North Strip, subject to a permanent easement to be granted in favor of [the West Shore Property Owners] for access over the North Strip and to maintain docks and/or boathouses on the North Strip." [App. 86, 2006 Settlement Agreement § 3]. This provision plainly reflects the parties' intent that Dring would grant an easement over the North Strip in favor of the West Shore Property Owners.

[12] Indeed, the District Court originally agreed with the West Shore Property Owners and reasoned: "Plaintiffs have fully performed under the [2006 Settlement] Agreement by releasing Defendants from any and all claims arising out of or relating to the Prior action and the West Shore Strip. There has been no material breach of the [2006 Settlement] [A]greement by *Plaintiffs* that would excuse Defendants from performance to them. The only material breach Defendants have suggested was by ALO, not Plaintiffs. Therefore, Defendants are not excused from performing their obligation to Plaintiffs under Section 3 of the [2006] Settlement Agreement." [App. 267, Oct. 6, 2015 Memo. (emphasis in original)].

Owners to which Dring was entitled: release of the West Shore Property Owners'

prescriptive easement claims.  Accordingly, Dring should be compelled to perform

its contractual duty of granting the West Shore Property Owners an easement

across the North Strip.

## C.  THE WEST SHORE PROPERTY OWNERS EFFECTIVELY HOLD AN EASEMENT AS A MATTER OF LAW OVER THE NORTH STRIP BASED ON DRING AND THE WEST SHORE PROPERTY OWNERS' MUTUAL RELEASE OF CLAIMS IN THE 2006 SETTLEMENT AGREEMENT

As explained above, the District Court held that the West Shore Property

Owners had released any and all claims they may have had against Dring relating

to the ALO Litigation or the West Shore Strip.  Even though the 2006 Settlement

Agreement did not specifically provide that the West Shore Property Owners were

releasing prescriptive easement claims, the trial court concluded as such.  [*See*

App. 88, 2006 Settlement Agreement § 6].  The trial court specifically held that the

West Shore "Property Owners' consideration (their release) is directly apportioned

to Dring's release," [App. 8, Oct. 10, 2018 Memo], and thus necessarily concluded

that Dring also released any trespass claims they could bring against the West

Shore Property Owners, or their successors and assigns.  In fact, "trespass" is

specifically mentioned as a type of claim the parties agreed to release in the 2006

Settlement Agreement.  [*See id.*  (". . . including but not limited to claims for

24

compensatory damages, punitive damages, **trespass**, attorneys['] fees or costs of court.") (emphasis added)].

As a practical matter, then, if the West Shore Property Owners cannot bring suit for a prescriptive easement over the North Strip and Dring cannot bring suit for trespass over the North Strip against the West Shore Property Owners, then the West Shore Property Owners essentially have an easement over the North Strip as a matter of law. This outcome makes practical sense and is supported by the trial court's conclusion that the consideration supporting the West Shore Property Owners' release of their prescriptive easement claims was not a deeded easement from Dring, but rather was Dring's release of any and all claims against the West Shore Property Owners.

The District Court held that the 2006 Settlement Agreement was non-severable "and represents a mutual release of each party's predecessors in title, successors and assigns from any and all claims arising out of or relating to the Lawsuit and the West[] Shore Strip . . . ." [App. 88, 2006 Settlement Agreement, § 6]. Denying an easement to the West Shore Property Owners is fundamentally unfair to the West Shore Property Owners, whose only reason for agreeing to the 2006 Settlement Agreement was the promise of an easement by deed over the North Strip. "When performance of a duty under a contract is due, any nonperformance is a breach." *Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459, 467

25

(Pa. Super. Ct. 2003) (quoting Restatement (Second) of Contracts § 235(2)).

When a breach is material, the other party can avoid its own contractual

obligations under the agreement. *True R.R. Assocs., L.P. v. Ames True Temper,*

*Inc.*, 152 A.3d 324, 340 (Pa. Super. Ct. 2016) (citing *Widmer*, 837 A.2d at 467).  If

the West Shore Property Owners performed their contractual duty to release their

claims against Dring (as the District Court concluded by rejecting the West Shore

Property Owners' prescriptive easement claim on the basis of the release), then

Dring must perform its contractual duty and grant an easement in favor of the West

Shore Property Owners.  No reasonable reading of the 2006 Settlement Agreement

would allow Dring to:  (1) avoid deeding the West Shore Property Owners an

easement, (2) defeat the West Shore Property Owners' prescriptive easement claim

due to the mutual releases, and (3) preserve Dring's own trespass claim, in spite of

the release.

    To be sure, the only reasons the West Shore Property Owners agreed to

release claims against Dring in the 2006 Settlement Agreement was the fact that

the West Shore Property Owners believed they were ensuring their rights to cross

the West Shore Strip.  The District Court record details how the West Shore

Property Owners "have maintained substantial and attractive improvements on

their waterfront areas.  These improvements include walkways, patios, seawalls

and docks.  In all cases, the seawalls and docks are constructed within the [W]est

26

[S]hore [S]trip."  [App. 972, Aff. of Theodore Malakin ¶ 10].  The record shows that the West Shore Property Owners have continuously used the lake for both summer and winter recreational activities for generations.  [App. 971–72, *Id.* ¶ 9]. The only way for the West Shore Property Owners to access the lake from their properties is by crossing the West Shore Strip.  The West Shore Property Owners would never have agreed to the 2006 Settlement Agreement if it served to strip them of their rights to pursue prescriptive easements claims to cross the West Shore Strip, while not guaranteeing their ability to cross the West Shore Strip and access the lake.

However, notwithstanding the trial court's finding that both Dring and the West Shore Property Owners had released all claims against the other "arising out of or relating to the Lawsuit and the West[] Shore Strip," the District Court declined to enforce the practical consequence of Dring's release of its trespass claims – the West Shore Property Owners are entitled to an easement over the land on the West Shore Strip between the low and high water marks of Lake Ariel. That the District Court subsequently dismissed Dring's trespass claim without prejudice is of no consequence because it was based on a stipulation that did not acknowledge that Dring in fact has a viable trespass claim.  Accordingly, the West Shore Property Owners ask this Court to hold as a matter of law that, because Dring has released any trespass claim they may have had against the West Shore

27

Property Owners, Dring is now obligated to grant an easement in favor of the West

Shore Property Owners, a result that implements the parties' intent and does

equity. *See, e.g.*, *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) (citing 1 J.

Pomeroy, Equity Jurisprudence § 181, p. 257 (5th ed. 1941)) ("At common law,

however, there were many situations . . . in which an equity court could 'establish

purely legal rights and grant legal remedies which would otherwise be beyond the

scope of its authority.'"); *Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294,

300 (1955) ("Traditionally, equity has been characterized by a practical flexibility

in shaping its remedies . . . .").

## D. DRING IS NOT THE PREVAILING PARTY UNDER THE 2006 SETTLEMENT AGREEMENT AND THUS SHOULD NOT BE ENTITLED TO ATTORNEYS' FEES

Dring's claim for attorneys' fees is based on the 2006 Settlement

Agreement, a written contract explicitly governed by Pennsylvania law. The intent

of the parties to a written contract is ascertained from that writing. *Gustine*

*Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc.*, 892 A.2d 830, 837 (Pa.

Super. Ct. 2006) (citation omitted). The contractual terms are ascribed their

ordinary meaning. *Id.* Where language is unambiguous, the intent is gleaned from

the language. *Id.* Here, the District Court erred in determining that Dring was the

prevailing party under the terms of the 2006 Settlement Agreement.

The definition of "prevailing party" differs depending on whether the right to attorneys' fees derives from a statute or through the contractual agreement of the parties.  The claim for attorneys' fees at issue in this matter arises from the 2006 Settlement Agreement between the parties.  The 2006 Settlement Agreement does not provide a definition of "prevailing party."  As a result, the Court should look to the ordinary and plain meaning of "prevail" to discern the contractual intent of the parties.  *See Cordero v. Potomac Ins. Co. of Ill.*, 794 A.2d 897, 900 (Pa. Super. Ct. 2002).  For example, Merriam Webster's has defined "prevail" as "to gain ascendancy through strength or superiority; TRIUMPH."  Merriam Webster's Collegiate Dictionary, 7th ed. at 924.  Similarly, Black's Law Dictionary has defined "prevail" as "to obtain the relief sought in an action; to win a lawsuit . . . ."  Black's Law Dictionary, 11th ed.  Black's Law Dictionary has also defined "prevailing party" as "[t]he party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention; the one in whose favor the decision or verdict is rendered and judgment entered."  Black's Law Dictionary, 6th ed., at 1188.  The Pennsylvania Superior Court has noted that "'prevailing party' is commonly defined as 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded' . . .  Such a pronouncement does

29

not accompany a compromise or settlement." *Profit Wize Mktg. v. Weist*, 812 A.2d 1270, 1275–76 (Pa. Super. Ct. 2002).

The District Court determined that Dring was the prevailing party as to the West Shore Property Owners' original claims. [*See* App. 18, Oct. 17, 2019 Memo. at 5]. But the law relied on in support of the District Court's ruling is distinguishable from the facts at hand. *See Zavatchen v. RHF Holdings, Inc.*, 907 A.2d 607, 608 (Pa. Super. Ct. 2006) (the trial court denied defendant attorneys' fees finding Defendant was not the "substantially prevailing party" pursuant to the Contractor and Subcontractor Payment Act, 73 P.S. §§ 501–516); *see also Gardner v. Clark*, 33 Pa. D. & C.3d 662, 664–65 (Phila. Ct. Com. Pl. 1985) (awarding defendant attorneys' fees pursuant to 41 P.S. § 407(b)).

As explained above, in this matter, the West Shore Property Owners sued Dring for: (1) breach of contract due to Dring's failure to convey easements over the West Shore Strip pursuant to the 2006 Settlement Agreement, and (2) for prescriptive easements over the West Shore Strip. Dring filed a counterclaim against the West Shore Property Owners for trespassing over the West Shore Strip. The District Court granted summary judgment in Dring's favor on the claims filed by the West Shore Property Owners for breach of contract and prescriptive easements. However, after the grant of summary judgment, Dring still had a pending counterclaim against the West Shore Property Owners for trespass. The

30

parties then entered into a court-approved stipulation wherein Dring voluntarily dismissed their trespass counterclaim without prejudice.

The dismissal without prejudice effectively acted as an adjudication on the merits and a dismissal with prejudice under the Federal Rules of Civil Procedure. Rule 41(a) provides that "the plaintiff may dismiss an action without court order by filing . . . a stipulation of dismissal signed by all parties who have appeared," but also states that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim [such a dismissal] . . . operates as an adjudication on the merits." Fed. R. Civ. P. 41(a). The District Court erred in determining that Rule 41 is not applicable in this situation. [*See* App. 19, Oct. 17, 2019 Memo. at 6].

Rule 41 prescribes the exact situation present in the current matter. Dring had filed a trespass counterclaim seeking damages and ejectment from the West Shore Strip against the West Shore Property Owners in the prior litigation and that counterclaim was to be dismissed with prejudice in the prior action. [*See* App. 88, 2006 Settlement Agreement §6]. Thus, the stipulation and dismissal in this case did not operate solely as a "compromise or settlement," but operated as an actual adjudication on the merits of the trespass action. In other words, the previous litigation was between the same parties, dealt with the same claim, and the

31

dismissal in the current suit now operates as an actual adjudication on the merits. [*See* App. 11, Apr. 23, 2019 Stipulated Order; *see also* Fed. R. Civ. P. 41].

Accordingly, Dring did not "prevail" on their sole claim. The District Court seemingly placed different value on the two sides – because one came from a clear Order of Court and the other required resort to the Federal Rules of Civil Procedure. In reality, the two are both equivalent adjudications on the merits, no one lesser than the other. As a result, with an adjudication on the merits in the West Shore Property Owners' favor on Dring's counterclaim, and summary judgment in Dring's favor on the West Shore Property Owners' claims, both parties, in effect, prevailed in successfully defending the claims against them, and the District Court erred by determining that Dring was the prevailing party in this matter and by awarding Dring attorneys' fees.

## CONCLUSION

For the foregoing reasons, the West Shore Property Owners respectfully request that this Court reverse the District Court's entry of judgment in favor of Dring, vacate the District Court's award of attorneys' fees, and either enter judgment in favor of the West Shore Property Owners requiring Dring to grant them an easement over the North Strip or vacate and remand this matter to the District Court for additional proceedings.

32

Dated:  January 4, 2021

Respectfully submitted,

**STEVENS & LEE, P.C.**

By: */s/ Thomas I. Vanaskie*
Thomas I. Vanaskie (Id. No. 29063)
Peter J. Adonizio, Jr. (Id. No. 325990)
425 Spruce Street
Suite 300
Scranton, PA 18503
Phone:  (570) 969-5360
Fax:  (570) 371-7360
tiv@stevenslee.com
pja@stevenslee.com

**OLIVER PRICE & RHODES**
Joseph A. O'Brien (Id. No. 22103)
Jenna Kraycer Tuzze (Id. No. 324116)
1212 South Abington Road
P.O. Box 240
Clarks Summit, PA 18411
Phone:  (570) 585-1200
Fax:  (570) 585-5100
jaob@oprlaw.com
jmk@oprlaw.com

*Attorneys for Plaintiffs-Appellants*
*Marjorie M. Gillespie, et al.*

33

## <u>CERTIFICATE OF SERVICE</u>

I, Peter J. Adonizio, Jr., Esquire, certify that on this date, I electronically

filed a true and correct copy of the foregoing *Brief of Appellants* using the Court's

CM/ECF system which will send notification of such filing to the following

counsel of record for Appellees:

Howard A. Rothenberg  
Ryan P. Campbell  
Dave W. Rothenberg  
Rothenberg & Campbell  
345 Wyoming Ave., Suite 210  
Scranton, PA 18503  

Michael Profita  
Decotiss, FitzPatrick & Cole, LLP  
Glenpointe Centre West  
500 Frank W. Burr Blvd.  
Suite 31  
Teaneck, NJ 07666  

Date:  January 4, 2021               */s/ Peter J. Adonizio, Jr.*
                                      Peter J. Adonizio, Jr.

# **CERTIFICATIONS**

The undersigned certifies as follows:

1.  I am a member in good standing of the Bar of the Third Circuit.

2.  This Brief complies with the page and word limitations of Fed. R. App. P. 32(a)(7)(A) and (B) in that it contains approximately 8,654 words, excluding the cover page, tables, signature block, and certifications.

3.  This document complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

4.  The text of the printed and electronic versions of the Brief are identical.

5.  The Microsoft Forefront Endpoint Protection virus protection program has been run on the electronic version of this Brief, and no viruses were detected.


Date:  January 4, 2021                    */s/ Thomas I. Vanaskie*