Docket Nos. 19-2073 & 19-3582

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

MARJORIE M. GILLESPIE, *et al.*,

*Plaintiffs-Appellants*,

v.

LORI DRING and NANCY ASARO,

*Defendants-Appellees*.

On Appeal from the United States District Court
For the Middle District of Pennsylvania
No. 3:15-cv-950 (Hon. Matthew W. Brann)

## BRIEF OF APPELLEES LORI DRING & NANCY ASARO

**ROTHENBERG & CAMPBELL**

Howard A. Rothenberg (Id.# 38804)
Ryan P. Campbell (Id.# 317838)
345 Wyoming Avenue, Ste. 210
Scranton, PA 18503
p. 570.207.2889
f. 570.207.3991
HRLaw01@gmail.com
HRLaw04@gmail.com

**CIPRIANI & WERNER, P.C.**

Philip A. Davolos, III (Id.# 210225)
415 Wyoming Avenue
Scranton, PA 18503
p. 570.347.0600
f. 570.347.4018
PDavolos@c-wlaw.com

*Attorneys for Defendants-Appellees Lori Dring & Nancy Asaro*

## **TABLE OF CONTENTS**

**JURISDICTIONAL STATEMENT**…………………………………………vii
**COUNTERSTATEMENT OF THE ISSUES PRESENTED**………………...viii
**RELATED CASES AND PROCEEDINGS**…………………………………ix
**COUNTERSTATEMENT OF THE CASE**…………………………………1
    A. Historical Background Relevant to the Suit Brought By Appellants
       Against  Appellees, Nancy Asaro and  Lori  Dring……………………1
        i.  The West Shore Strip……………………………………………1
        ii.  The Settlement Agreement and the Underlying Litigation………3
    B. The 2006 Agreement……………………………………………………7
        i.  The Express Terms of the  2006 Agreement, The  Admissions
          by WSPO  That Clarify Any Ambiguity, and the Facts
          Considered Germane By the District Court to the Interpretation
          of the Agreement……………………………………………………7
    C. Facts Concerning the Creation, Intent, and Meaning of the 2006
        Agreement Conclusively Established and Admitted by the WSPO…….16
**ARGUMENT**…………………………………………………………………20
    A. The District Court Properly Held That Dring Has Not Received the
        Instruments of Conveyance That She Was Entitled  To and,
        Therefore, Is Not Obligated to Deliver A Quitclaim Deed Subject to a
        Permanent Easement in Favor of WSPO, And This Holding Was Not
        Based Upon The Doctrine of Futility Alone, But Rather the Specific
        Obligations Created by the Settlement Agreement……………………..20
    B. The Court Below Properly Determined that the WSPO Do Not Have
        A Prescriptive Easement Claim, Because the Release of a Claim for
        Prescriptive Easements is Binding on the WSPO………………………26
        i.  WSPO Did Not Raise the Issue or Legal Theory Of Mutual
          Releases Creating a De Facto Easement Before the District
          Court Below, and are Prohibited From Raising This New
          Legal Theory On Appeal……………………………………………...26
        ii.  The WSPO Fail to Cite Any Legal Authority That Supports
          the "De Facto Easement" Theory Because None Exists,  And
          Instead WSPO Cite Inapposite Authority That Undermines
          Their Arguments……………………………………………………30
    C. Dring is the Prevailing Party Pursuant to the 2006 Agreement And
        Is Entitled to Attorneys' Fees as Ruled by Judge Caputo………………34
**CONCLUSION**………………………………………………………………..40

# TABLE OF AUTHORITIES

**CASES**

Ariel Land Owners, Inc. v. Dring,
   No. 3:15-cv-00478, 2018 WL  3934623
   (M.D. Pa. Aug. 16 2018)…………………………………6, 11, 12,13, 22, 26

Ariel Land Owners, Inc. v. Dring,
   No. CIV.A. 3:01-cv-00294,  2005 WL  2414123 (M.D. Pa. Sept.
   30, 2005)……………………………………………………………………….3

Ariel Land Owners, Inc. v. Dring,
   No. CIV.A. 3:01-cv-00294-ARC, 2008 WL 189644 (M.D. Pa. Jan. 18,
   2008), *amended on reconsideration in part*, No. CIV. A. 3:01-cv-0294,
   2008  WL 3837482 (M.D. Pa. Aug. 13, 2008)………………..………..…6

Ariel Land Owners, Inc. v. Dring,
   374 F.App'x 346 (3d Cir. 2010)………………………………………...6,  11

Boro Constr., Inc. v. Ridley Sch. Dist.,
   992 A.2d 208 (Pa.  Cmwlth. 2010)………………………..………………….35

Brown v. Bd. of Educ. Of Topeka, Kan.,
   349 U.S. 294, 75 S.Ct. 753 (1955)……………………………………………33

Brown v. Bd. of Educ. Of Topeka, Shawnee Cty., Kan.,
   347 U.S. 483, 74 S.Ct. 686 (1954)……………………………………………33

Burgess v. Senior,
   64  Pa. D.& C. 167  (Pa. Ct. Comm. Pl. 1945)……………..………………….36

Cooter  & Gell,
   496 U.S. 384 (S. Ct.  1990)……………………………………………………..38

Feld v. Primus Technologies Corp.,
   97 Fed. R. Evid. Serv. 777, 2015 WL 2357082 (M.D. Pa. 2015)…....……..21

Flick v. Borg-Warner Corp.,
   892 F.2d 285 (3d Cir. 1989)……………..…………………………………29

<u>Frank v. Colt Industries, Inc.</u>,
    910F.2d 90 (3d Cir.1990)……………………………………………..29

<u>Gardner v. Clark</u>,
    33 Pa. D.  & C.3d  662 (Pa. Ct. Comm. Pl. 1985)……………….…………37

<u>Harris v. City of Philadelphia</u>,
    35 F.3d 840 (3d Cir. 1994)……………..……………………………29, 30

<u>Hormel v. Helvering</u>,
    312 U.S. 552, 61 S.Ct. 719 (1940)……………..……………………28, 29

<u>In re American Biomaterials Corp.</u>,
    954 F.2d 919 (3d Cir. 1992)…………………………………………..29

<u>Krebs v. United Refining Co. of Pennsylvania</u>,
    893 A.2d 776 (Pa. Super. 2006)……………………...…………………35

<u>Lynn v. Smith</u>,
    664 F.Supp.  929 (M.D.  Pa. 1986)…………………….………………..37

<u>Marsa v. Metrobank for  Sav.,  F.S.B.</u>,
    825 F. Supp. 658 n.7 (D.N.J.  1993)………………………………….25

<u>Matsushita Elec. Indus. Co.  v. Zenith Radio Corp.</u>,
    475 U.S. 574, 106 S.Ct. 1348  (1986)……………………..……………13

<u>Mertens v. Hewitt Assocs.</u>,
    508 U.S. 248, 113 S. Ct. 2063 (1993)…………………….……………..33

<u>Mirkowicz v. Reading Co.</u>,
    84 F.2d  537 (3d Cir. 1936)……………………………………...………28

<u>Newark Morning Ledger Co. v. United States</u>,
    539 F.2d 929 (3d Cir. 1976)……………………………………28, 29

<u>Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>,
    7 F.3d 1110 (3d Cir. 1993)………...……………………………29

Profit Wize Mktg. v. Wiest,
     812 A.2d 1270 (Pa. Super. 2002)…………….…………………………36

Sachanko v. Gill,
     388 F.2d 859 (3d Cir. 1968)………………………………………………28

Singleton v. Wulff,
     428 U.S. 106, 96 S.Ct. 2868 (1976)………………...…………………29

Stahl et al. v. Erie Delivery Co.,
     31 Pa. D. & C.167  (Pa. Ct. Comm. Pl. 1937)……………...……………36

Tromza v. Tecumseh Products Co.,
     378 F.2d 601 (3d Cir. 1967)…………………………………………………..28

True R.R. Assocs., L.P. v. Ames True Temper, Inc.,
     152 A.3d 324 (Pa. Super. Ct. 2016)………………………….………………31

Tyler v. O'Neill,
     112  Fed.Appx.158 (3d Cir. 2004)……………………………………………36

U.S. v.  Catena,
     500 F.2d 1319 (3d Cir. 1974)…………………………………………………21

Widmer Eng'g, Inc. v. Dufalla,
     837 A.2d 459 (Pa. Super. Ct. 2003)………………………..…………………30

Yaros v. Trustees of the Univ. of Pennsylvania,
     742 A.2d 1118 (Pa. Super. 1999)………………………..…………………33

Zavatchen v. RHF Holdings, Inc.,
     907 A.2d 607 (Pa. Super. Ct. 2006)………………………….………………34

## STATUTES, RULES & REGULATIONS

28 U.S.C.  § 1291…………………………………………………………….vii

28 U.S.C. § 1332………………………………………………………..vii

Fed. R. Civ. P. 41…………………………………………………………37, 38

Fed. R. Civ. P. 60………………………………………………………..vii

## OTHER AUTHORITIES

Black's Law Dictionary, 7th ed. At 1145………………………....………..36

E.A. Farnsworth, Contracts, §8.9 (2 Ed. 1990)…………………….….………25

Restatement (Second) of Contracts § 253(2) (1981)…………………..…..23, 24

# JURISDICTIONAL STATEMENT

The District Court initially exercised diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332 when the action subject to the instant matter was filed in 2015. Five (5) years later, Appellants' challenged diversity of citizenship and filed a Motion for Relief from Judgment under Fed. R. Civ. P. 60(b)(4), arguing that at the time the action was brought, diversity of citizenship did not exist because one of the plaintiffs was a citizen of the same state as both defendants (New Jersey). In ruling on Appellants' Rule 60 Motion, the Honorable Judge Matthew Brann of the District Court rejected Appellants' request to dismiss the entire action, holding that while diversity did not exist at that time the matter commenced in the District Court, severing the non-diverse toxic plaintiff preserves the years of litigation in this matter. Judge Brann then severed the non-diverse plaintiff. See Marjorie M. Gillespie, et al., v. Lori Dring & Nancy Asaro, No. 3:15-CV-00950, WL 4989888 (M. D. Pa. Oct. 27, 2021)

Therefore, this Honorable Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. This is an appeal from final decisions made by the District Court on October 10, 2018 and October 17, 2019, respectively. Both the October 10, 2018 Order and the October 17, 2019 Order were issued by Judge Caputo and all parties have asserted that these Orders are appealable under 28 U.S.C. § 1291.

## <u>COUNTERSTATEMENT OF THE ISSUES PRESENTED</u>

Whether the District Court below properly held that Dring has not received the instruments of conveyance that she was entitled to and, therefore, is not obligated to deliver a quitclaim deed subject to a permanent easement in favor of WSPO where the Court's holding was not based upon the doctrine of futility alone, but rather the specific obligations created by the 2006 settlement agreement.

Whether the District Court below properly held that the WSPO do not have a Prescriptive Easement claim, and the release language does not "effectively" create an easement over the northern part of the western shore of Lake Ariel ("North Strip").

Whether the District Court below properly held that Dring was the "prevailing party" pursuant to the 2006 Agreement and is entitled to attorneys' fees as ruled by the lower court.

## **RELATED CASES AND PROCEEDINGS**

The instant appeal is related to two (2) consolidated appeals:  <u>Marjorie M. Gillespie, et al., v.  Lori Dring and Nancy Asaro</u>, No. 19-3582, and No. 19-2073. These appeals are related to yet another appeal pending before this Honorable Court, <u>Lori Dring, et al. v.  Ariel Land Owners, Inc.</u>, No. 20-2080, an appeal pending from a case directly related to the parties and issues herein.

## COUNTERSTATEMENT OF THE CASE

A. HISTORICAL BACKGROUND RELEVANT TO THE SUIT BROUGHT BY APPELLANTS AGAINST APPELLEES, NANCY ASARO AND LORI DRING.

The Appellees, Lori Dring and Nancy Asaro (hereinafter "Appellees" or "Dring") did not commence the lawsuit that resulted in the instant appeal. Rather, Appellants, property owners who own summer homes and cottages near the western shore of Lake Ariel, Wayne County, Pennsylvania (hereinafter "WSPO" for West Shore Property Owners, or "Appellants"), commenced the action below that resulted in the instant appeal.

The instant appeal involves (a) property rights to a parcel of land owned in fee by Dring and (b) a 2006 Settlement Agreement ("2006 Agreement") that resolved the original underlying litigation.

i. The West Shore Strip

Dring owns approximately eighty-nine (89) acres of land on or near the western shore of Lake Ariel, Wayne County, Pennsylvania. (See, App. Doc. No. 36 at p. 11 Appellees' Brief (hereinafter "App. Brief") at p.  1 ). The Dring properties consist of multiple parcels of land, one of which is several feet wide, stretches for about a mile along the western shore of Lake Ariel, and exists between land owned

by the WSPO and the lake itself ("West Shore Strip"). In other words, the most direct route from the property of the WSPO to the lake is across the West Shore Strip. [1]

The parcel at issue is known colloquially as, and referred to in this litigation as, the "West Shore Strip".   However, "strip" is perhaps a bit of a misnomer; the boundaries of the West Shore Strip are determined by the elevation of the high and low water marks along the western shore of Lake Ariel. Thus, the grade of the land is determinative of the width of the so-called "strip" which is roughly 2.5 feet at locations of the steepest grade, and much larger in width where the terrain slopes more gradually between the high and low water marks. Part of the West Shore Strip follows the course of West Shore Drive for roughly a mile between that road and the waters/shoreline of Lake Ariel.  Thus, it is a parcel of significant length and varying width. It is ***not*** just a 2.5 foot strip of land as the WSPO Brief suggests. Dring own the West Shore Strip in fee and that is not in dispute by the parties. However, the WSPO attempted to make a claim for prescriptive easements over the West Shore Strip, and for the reasons set forth in greater detail below, the District Court properly granted Summary Judgment against the WSPO and dismissed their claims for prescriptive easements against Dring.  After losing in the District Court WSPO took this appeal.

---

[1]The overwhelming majority of the individual WSPO properties do not border on or touch the boundaries of the West Shore Strip. Rather, there is a road and a buffer of land not owned by WSPO between the WSPO properties and the West Shore Strip.

ii. <u>The Settlement Agreement and the Underlying Litigation</u>

In 1999, a for-profit company, Ariel Land Owners, Inc. ("ALO"), brought a quiet title action (and other claims) against Dring seeking to, *inter alia*, quiet title to the lake bed and waters of Lake Ariel.  ALO, not Dring, commenced that litigation in the Wayne County Court of Common Pleas. [2] *See Ariel Land Owners, Inc. v. Dring*, 188-c-1999.  Dring removed that Wayne County action to the District Court, where it is docketed as *Ariel Land Owners, Inc. v. Dring*, 3:01-cv-00294-ARC (2001) ("<u>Dring I</u>"). In <u>Dring I</u>, Dring joined the WSPO as third-party defendants, because the WSPO were at times traversing and/or otherwise intermittently using or occupying portions of the West Shore Strip owned by Dring.  Dring's claims against the WSPO sounded in trespass and ejectment. In <u>Dring I</u>, WSPO brought a counterclaim against Dring for prescriptive easements over the West Shore Strip for ingress and egress to  Lake Ariel as well as for various structures and improvements that encroached on the West Shore Strip.  Thus, the parties to <u>Dring I</u> were: (1) ALO, (2) Dring, and (3) WSPO.

As mentioned above, Dring owns approximately eighty-nine (89) acres of land on the western shore of Lake Ariel. Through the 1999 action, that became <u>Dring</u>

---

[2] Appellants' Brief attempts to cast Dring/Asaro as creating a litigious atmosphere related to lands owned in and around Lake Ariel.  In reality, ALO has a long history of litigating matters against property owners in and around Lake Ariel as evidenced by the dockets on both the Wayne County Court of Common Pleas as well as the U.S. District Court for the Middle District of Pennsylvania.

3

I following removal,  ALO sought to **prevent** Dring from using Lake Ariel, and to **prevent** Dring from developing their land in a manner that would include use of Lake Ariel for recreation.

ALO's primary purpose is to exploit its control of access to Lake Ariel and charge annual fees for leases and "lake rights." It charges those fees and compels those leases by bullying and threatening some of its neighbors with litigation and providing special access and privileges to those select families connected to or in favor with its very closely held ownership.

Indeed, property owners near Lake Ariel have paid millions of dollars over the years in annual fees to ALO, and those fees serve two primary purposes:  (1) to propagate vexatious litigation (such as the instant matter) and (2) to otherwise enrich ALO ownership and allow that small group to attempt to run Lake Ariel as their own personal fiefdom.

As <u>Dring I</u> progressed toward trial, on August 28, 2006, all parties (i.e., Dring, ALO and WSPO) entered into a Settlement Agreement ("2006 Agreement"). (<u>See</u> App.  86-90). The 2006 Agreement settled the claims between Dring and WSPO and partially settled the claims between ALO and Dring. (<u>See</u> App.  86 at ¶ 1). The claims germane to this appeal are those between WSPO and Dring that were addressed in the 2006 Agreement.[3]

---

[3] The Agreement was Amended in part on August 21, 2007 (<u>See</u> App. 92).

4

The 2006 Agreement consisted of the following primary terms/elements:

(a) WSPO released their claims related to the West Shore Strip, and dismissed their claims made in <u>Dring I</u> with prejudice (the released and dismissed claims included those for prescriptive easements). (App. 88, 2006 Agreement, ¶ 6)

(b) Dring dismissed its claims raised in <u>Dring I</u> against WSPO, and released its claims accrued to that date, including the prior trespass by WSOP. (App. 88, 2006 Agreement, ¶ 6)

(c) Dring was to deliver to ALO a deed in fee to part of the West Shore Strip (specifically the part between the property of the WSPO and Lake Ariel) (App. 86, 2006 Agreement, ¶ 3)

(d) ALO was to execute and deliver documents and instruments in recordable form to Dring granting (i) four (4) "lake rights" and (ii) a permanent recordable easement over a parcel of land referred to as "Cardinal Lane" granting Dring, *inter alia*, the permanent rights of ingress and egress, to construct a dock, and use same for recreation, and park vehicles in the area of Cardinal Lane (App. 86-88, 2006 Agreement, ¶ 5).

<u>See</u>, <u>also</u>, Memorandum Opinion of Judge A. Richard Caputo, <u>Gillespie v. Dring</u>, NO. 3:15-CV-0950 ( M.D. Pa. Oct. 10, 2018) (hereinafter "Mem. Op.") at p. 1-9, App. p. 1-9; App. 465-468 (Defendants' Statement of Undisputed Material Facts in Support of Summary Judgment ("SOF")), and App, 933 (Response of Plaintiffs to Defendants' Statement of Undisputed Material Facts ("Resp. SOF")).

After the 2006 Agreement was executed, Dring and WSPO dismissed their respective claims against each other in <u>Dring I</u>. The only claims that remained were between Dring and ALO. The 2006 Agreement, as amended, required that the exchange of documents and instruments between ALO and Dring occur only after a final non-appealable judgment was entered in <u>Dring I</u> on the remaining claims between Dring and ALO. (<u>See</u>, App. 92, August 2007 Amendment).

Judge Caputo conducted a bench trial in <u>Dring I</u>, and issued two orders and opinions in 2008 following the conclusion of the proceedings in the District Court. <u>See</u>, <u>Ariel Land Owners, Inc. v. Dring</u>, No. CIV A 3:CV-01-0294, 2008 WL 189644 (M.D. Pa. Jan. 18, 2008), <u>amended on reconsideration in part,</u> No. CIV. A. 3:CV-01-0294, 2008 WL 3837482 (M.D. Pa. Aug. 13, 2008), and <u>aff'd,</u> 374 F. App'x 346 (3d Cir. 2010).

When <u>Dring I</u>, finally resolved, following an appeal before this Court styled <u>Ariel Land Owners, Inc. v. Dring</u>, 374 F. App'x 346 (3d Cir. 2010), ALO revealed to Dring that it did not have title to Cardinal Lane, and therefore could not execute and deliver to Dring instruments of conveyance, in recordable form, which transfer to Dring an easement over Cardinal Lane. (App. 2-3,4-6, Mem. Op. at p. 2-3,4-6, and <u>Dring v. Ariel Land Owners, Inc.</u>, No. 3:15-CV-00478, 2018 WL 3934623 (M.D. Pa. Aug. 16, 2018)). This amounted to repudiation of the 2006 Agreement by ALO, and breach by ALO. (<u>Id</u>.) Thus, there Dring's duty or obligation to deliver a deed to ALO never materialized, because ALO would not and could not deliver the easement over Cardinal Lane to Dring. (<u>Id</u>.)

The 2006 Agreement did not require Dring to deliver any deeds, documents or instruments directly to WSPO. (<u>Id</u>. and <u>see</u>, <u>also</u>, App. 1-9, Mem. Op. at p. 1-9, App. 465-468, SOF and App. 933, Resp. SOF). Rather, the 2006 Agreement required a simultaneous exchange of documents between ALO and Dring. (<u>Id</u>.) It further

6

required that the deed to ALO include or be made subject to an easement in favor of WSPO. In other words, if there is no deed to ALO then no easement can be created in favor of the WSPO. Nevertheless, the WSPO sued below for breach of the 2006 Agreement, and sought an order of the District Court to compel Dring to grant an easement over the West Shore Strip to each WSPO individually. (Id.) WSPO lost, Judge Caputo entered Summary Judgement against WSPO. WSPO appealed to this Court.

### B. THE 2006 AGREEMENT

      i.    THE EXPRESS TERMS OF THE 2006 AGREEMENT, THE ADMISSIONS BY WSPO THAT CLARIFY ANY AMBIGUITY, AND THE FACTS CONSIDERED GERMANE BY THE DISTRICT COURT TO THE INTERPRETATION OF THE AGREEMENT

The relevant parts of the 2006 Agreement are contained at ¶¶ 1, 2, 3, 5, 6, 7, 8, 9, 10, 14, 15, and 16.[4] The District Court also relied on parol evidence and admissions by WSPO to clarify, to the extent necessary, any ambiguity in ¶¶ 3 and 15 of the 2006 Agreement. (See App. 5, Mem. Op. at 5., and App. 414-419, January 19, 2016, Memorandum Opinion and Order of Judge Caputo on Reconsideration of Motion to Dismiss, expressly allowing Dring to present parol evidence).

---

[4] The 2006 Agreement Defines the WSPO as "Property Owners", and the WSPO are referred to as Property Owners throughout that document.

Paragraph 1, of the 2006 Agreement specifically states that WSPO and Dring settle all claims where the settlement between Dring and ALO is partial, with some claims preserved.[5] Paragraph 3 states the following:

> 3. Dring/Asaro agree to execute and <u>deliver to ALO</u> a quit claim <u>deed</u> of all of their right, title and interest in and to the North Strip, <u>subject to a permanent easement</u> to be granted in favor of the <u>Property owners</u> for access over the North Strip and to maintain docks and/or boathouses on the North Strip. This permanent easement is not intended to grant the Property Owners any rights in or over any lands owned by ALO, or any interest in lake Ariel owned by ALO. […] Dring/Asaro warrant and represent that they have not permitted any mortgages or other liens on the North Strip, and that there are no outstanding judgments against them.

(Emphasis supplied.) (App. 86, 2006 Agreement, ¶ 3).

The foregoing Paragraph 3 specifically states that Dring agreed to execute and deliver a quit claim deed to ALO, and that said deed would be subject to a permanent easement to be granted in favor of the WSPO. The WSPO admit that "the intention of Section 3 of the Settlement Agreement was that the easement in favor of the Property Owners was to be created in the quit claim deed to be delivered to ALO for the North Strip of West Shore Strip." (App. 5, Mem. Op. at p. 5, App. 86, 2006 Agreement at ¶ 3, App. 465-468, SOF at ¶ 13, and App. 933 Resp. SOF ¶ 1-13). The

---

[5] Paragraph 2, *inter alia*, describes the portion of the West Shore Strip to be conveyed to ALO under Paragraph 3.

2006 Agreement did not and does not and was never intended to require Dring to grant an easement directly to the WSPO. (Id.)

In response to the Motion for Summary Judgment below, WSPO admitted the first 13 Paragraphs of Dring's Statement of Facts without qualification. Paragraph 13 of Dring's Statement of Facts includes the following, all of which is completely admitted by WSPO:

> 13.   In his deposition on September 19, 2016, Mr. O'Brien acknowledged that he represented both ALO and the Property Owners (App. 496, O'Brien deposition, page 11, lines 8 through 11) and that the Property Owners were bound by the Settlement Agreement as negotiated by his firm. (App. 493, O'Brien deposition, page 14, lines 3 through 25). **Mr. O'Brien admitted that the intention of Section 3 of the Settlement Agreement was that the easement in favor of the Property Owners was to be created in the quit claim deed to be delivered to ALO for the North Strip of West Shore Strip.** (App. 496—495 O'Brien deposition, page 34, lines 21 through 25, page 35, lines 1 through 25, page 36, lines 1 through 25, and page 37, lines 1 through 15). **He further admitted that Section 15 provides that the parties were to exchange the deeds and instruments provided for in the Settlement Agreement at the same time.** (App. 500, O'Brien deposition, page 55, lines 16 through 25, and page 56, lines 1 through 3).

(See App. 468, SOF at ¶ 13, See also, App. 933, Resp. SOF and App. 5, Mem. Op. at p. 5).

Paragraph 5 of the 2006 Agreement states, in part, that "ALO shall execute and deliver to Dring/Asaro instruments of conveyance, in recordable form, which

transfer to Dring/Asaro the following: (a) Four (4) lake rights…  (b) a permanent easement over the water and parcel of land […] at the end of Cardinal Lane…" (App. 86-87, 2006 Agreement, ¶ 5).   Thus, Dring was to receive recordable instruments granting four lake rights and an easement over the Cardinal Lane property for the purposes of, *inter alia*, a dock and parking. (Id.; see also App. 465-468, SOF and App. 933 Resp. SOF). In addition, Paragraph 5 states that with regard to the Cardinal Lane easement "ALO warrants that it has good and marketable title […], and the right to grant this easement." (App. 86-87, 2006 Agreement, ¶ 5). Likewise, with regard to the West Shore Strip, in  Paragraph 3 Dring "warrant and represent that they have not permitted any mortgages or other lines on the […] Strip, and that there are no outstanding judgments against them."   (App. 86 2006 Agreement, ¶ 3).

Paragraph 15 of the 2006 Agreement states the following:

> **15.  All Deeds and other instruments referred to herein shall be exchanged by the parties at a mutually convenience [sic] time within 30 days after obtaining the subdivision approval set forth in Section 2 hereof.**

(emphasis supplied.) ( Id. at App. 89 at ¶ 15).

The revision in 2007, does not change the requirement that all deeds and other instruments referred to in the 2006 Agreement shall be exchanged at a mutually convenient time. (See App. 92, 2007 Amendment). The WSPO admit the conclusively established fact that the 2006 Agreement and the intent behind the 2006

Agreement, pursuant to Paragraph 15, was that ALO and Dring were to exchange the deeds and instruments provided for in the 2006 Agreement at the same time. (App. 468, SOF; see also, App. 933 Resp. SOF, and App. 5, Mem. Op. at p. 5).

The only deeds and instruments that the parties were required to exchange were (1) deed from Dring to ALO, (2) recordable instrument conveying lake rights from ALO to Dring, and (3) recordable easement over the Cardinal Lane property from ALO in to Dring. The 2006 Agreement does not contain any reference to any instruments or deeds to be conveyed by Dring directly to WSPO. This is a fact conclusively established by admission. (App. 1-9, Mem. Op. 1-9).

Only after Dring I resolved, did ALO reveal to Dring that it did not have title to Cardinal Lane, and therefore could not execute and deliver to Dring instruments of conveyance, in recordable form, which transfer to Dring an easement over Cardinal Lane. This resulted in a suit by Dring against ALO styled, Dring v. Ariel Land Owners, Inc. , No. 3:15-CV-00478- ARC ("Dring II"). (App. 1-9, Mem. Op. 1-9, and Dring v. Ariel Land Owners, Inc., No. 3:15-CV-00478, 2018 WL 3934623, (M.D. Pa. Aug. 16, 2018), aff'd on other grounds, 782 F. App'x 133 (3d Cir. 2019)).

In Dring II, Judge Caputo held that ALO repudiated the 2006 Agreement, and stated the following:

> Based on (1) the statements of O'Brien, (2) ALO's failure to obtain marketable title to Cardinal Lane, (3) ALO's failure to provide assurances, and (4) ALO's failure to attend the closing, I will conclude that ALO made clear

11

that it would not perform under the Settlement Agreement. Therefore, I find the ALO repudiated the Settlement Agreement.

Dring v. Ariel Land Owners, Inc., No. 3:15-CV-00478, 2018 WL 3934623, at *8 (M.D. Pa. Aug. 16, 2018), aff'd on other grounds, 782 F. App'x 133 (3d Cir. 2019).

In the matter presently before this Court Judge Caputo's Oct. 10, 2018, Memorandum Opinion, reiterated the facts concerning ALO's lack of title to Cardinal Lane and stated, in part, the following:

> At the time of formation of the settlement agreement, ALO (if not all parties to the settlement) believed it had good title to Cardinal Lane. ALO received the deed to the property from the Swingles, which was dated January 12, 2004 and recorded in Wayne County soon thereafter. (Doc. 64 at ¶ 17; Doc. 75 at ¶ 17). However, the Swingles conveyed the same property to the Culottas via a deed dated February 11, 2002 and recorded in Wayne County on the same date. Joseph O'Brien admitted to Dring's counsel on November 8, 2013 that "ALO's ability to convey the Cardinal Lane easement had been challenged." (Doc. 75 at ¶ 22). Since then, the Court of Common Pleas of Wayne County has determined that the Culottas have title to Cardinal Lane, not ALO. (Doc. 94-2 at 7-8). It seems that the Culottas are unwilling to negotiate with ALO. (Doc. 75 at ¶ 22).

(App. 2, Mem. Op. at p. 2).

The District Court further held in both Dring II and the matter before the Court that Dring's performance of its obligations to ALO under the 2006 Agreement was

completely excused by the repudiation. (App. 3, 5-6, Mem. Op. at p. 3, 5-6, and

Dring v. Ariel Land Owners, Inc., No. 3:15-CV-00478, 2018 WL 3934623, (M.D.

Pa. Aug. 16, 2018), aff'd on other grounds, 782 F. App'x 133 (3d Cir. 2019)).

Moreover, given the simultaneous exchange requirement under Paragraph 15,

as admitted by WSPO through their counsel Joseph O'Brien, the duty to deliver the

deed to the ALO subject to an easement in favor of the WSPO never arose at all,

because of the repudiation by ALO.

> While Sections 15 and 3 of the agreement were ambiguous before, Joseph O'Brien's testimony and the Property Owners' **admissions** make the agreement, and the parties' intent, clear. Performances were to be exchanged **simultaneously under Section 15**, with the exception of Dring's obligation to obtain subdivision approval. And **under Section 3**, **title to the North Strip and the Property Owners' easements were to be conveyed in the same instrument**, despite the Property Owners' contention that James Gillotti (another attorney who helped draft the settlement agreement) indicated "that the preferred way to consummate the transfer of the various interests in the west shore strip would be by separate deeds." (Doc. 76 at 13). Gillotti's testimony does not create a genuine dispute: the fact that separate deeds would be the "preferred way" to transfer property rights does not mean the settlement agreement permits such an arrangement. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts").

(App. 3, 5-6, Mem. Op. at p. 3, 5-6).[6]

In the instant appeal, the WSPO do not even seem to be challenging the factual determination that the 2006 Agreement required simultaneous exchange. Likewise, the WSPO seem to be ignoring the reasoning behind Judge Caputo's holdings in the Mem. Op. and instead invent new legal theories on appeal.

The 2006 Agreement contains a mutual release between WSPO and Dring. This release is contained in Paragraph 6 of the 2006 Agreement, which reads as follows:

> 6. The Property Owners on the one hand; and Dring/Asaro on the other hand do hereby release the other party and such party's predecessors in title, successors and assigns from any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip including but not limited to claims for compensatory damages, punitive damages, trespass, attorneys fees, or costs of this court.

(App. 88, 2006 Agreement, ¶ 6) [7]

---

[6] It should be noted here that the WSPO have abandoned the argument regarding Gillotti's testimony on appeal and WSPO have not addressed Gillotti's testimony at all in the legal arguments briefed on appeal.

[7] It should be noted that unlike the claims released by the WSPO there was a reservation of the right to make future claims in favor of Dring contained in Paragraph 9, which reads as follows:

> **9. All claims against the Property owners set forth in the Third Amended Counterclaim will be dismissed with prejudice.** All claims asserted in the action pending in the Court of Common Pleas of the 22nd Judicial District, Commonwealth of Pennsylvania, Wayne County, Docket No. 246-2002 CV are hereby released, except to the extent any of such claims are preserved under the next sentence, and the parties agree that any claims preserved under the

The foregoing release language was the basis for the District Court's dismissal of the WSPO's prescriptive easement claim. The Court held that the foregoing language is unambiguous:

> Here, the language of the release is clear and unambiguous: Section 6 of the agreement provides that "[t]he Property Owners on the one hand; and Dring/Asaro on the other hand hereby release the other party ... from any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip including but not limited to claims for [damages], trespass, attorneys fees, or costs of court." (Doc. 64-1 at 4). The Property Owners claim prescriptive easements over the Western Shore Strip, (Doc. 22 at 22-43), which are claims "relating to" the Western Shore Strip. And the broadness of the language "any and all claims" and "including but not limited to" further supports the conclusion that prescriptive easement claims are covered under the release.

---

> next sentence are not barred by this release.  Except for the issues referred to in Section 7 hereof,  the remaining claims of ALO set forth in the Third Amended Complaint and the remaining claims of Dring/Asaro against ALO set forth in the Third Amended Counterclaim and the defenses raised by ALO and Dring/Asaro are preserved for trial. Nothing in this Agreement shall constitute an admission or acknowledgement as to, or evidence of, the title of ALO or Dring/Asaro to any property, or the boundary line of any property owned by ALO or Dring/Asaro.  **This agreement shall not constitute a bar against or release of any existing or future rights, claims or causes of action held by or accruing in favor of Dring/Asaro, except  to the extent specifically released or to be dismissed as provided  by this Agreement.**

> The Property Owners' remaining arguments—failure of consideration and equitable estoppel—are also unavailing.

(App. 7-8, Mem. Op. at p. 7-8).

Finally, Paragraph 14 of the 2006 Agreement permits the prevailing party to recover attorneys' fees, and that is exactly what happened in the matter below. Paragraph 14 states the following:

> 14.    The United States District Court for the Middle District of Pennsylvania shall have exclusive jurisdiction over any action or proceeding involving the interpretation or breach of this Agreement, and the parties hereto submit to the personal jurisdiction of such Court. **The prevailing party in any such action shall be entitled to recover reasonable attorney's fees from the other party.**

(App. 9, 2006 Agreement ¶ 14). Dring is the prevailing party and pursuant Paragraph 14 the District Court awarded attorney's fees.

## C. FACTS CONCERNING THE CREATION, INTENT, AND MEANING OF THE 2006 AGREEMENT CONCLUSIVELY ESTABLISHED AND ADMITTED BY WSPO.

The following facts have been admitted by Appellants and are conclusively established and irrefutable. (App. 2, 4-6, Mem. Op. at p. 2, 4-6, and See, App. 465-468, SOF ¶¶ 1-13 and App. 933, Resp. SOF – admitting without qualification each and every one of the Paragraphs 1-13 to the SOF). The WSPO unequivocally admit the following:

> 1.    During the course of the trial of the matter entitled <u>Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro</u>, United States District Court, Middle District of

Pennsylvania, Docket No.: 3-0 l-CV-0294, a partial settlement of the issues between the parties was agreed upon by the parties, which resulted in a written Settlement Agreement executed on August 28, 2006, by and between the "Property Owners," Ariel Land Owners, Inc. ("ALO"), and Dring/Asaro, a true copy of which is annexed hereto as Exhibit" l" (the "Settlement Agreement").

2.      The Settlement Agreement was amended by the parties on August 21, 2007 and a true copy of the Amendment to Settlement Agreement (the "Amendment") is annexed hereto as Exhibit "2."

3.      Section 3 of the Settlement Agreement provides that "Dring/Asaro agree to execute and deliver to ALO a quit claim deed of all of their right, title and interest in and to the North Strip, subject to a permanent easement to be granted in favor of the Property Owners for access over the North Strip and to maintain docks and/or boathouses on the North Strip."

4.      Section 5 of the Settlement Agreement requires that ALO "shall execute and deliver to Dring/Asaro instruments of conveyance, in recordable form," in favor of Dring/Asaro, transferring four lake rights and a permanent easement over a parcel of land known as Cardinal Lane located at the eastern shore of Lake Ariel, described as a rectangular parcel of land of approximately thirty feet in width along the shoreline and two hundred feet in depth above the shore line (the "Dock Area"). The easement was to permit Dring/Asaro to construct and maintain a dock for the dockage of four boats; to permit the parking of four automobiles on Cardinal Lane; and for storage of removable dock sections on Cardinal Lane.

5.      In Section 5(b) of the Settlement Agreement, ALO warranted to Dring/Asaro that ALO had good and marketable title to the Dock Area, and the right to grant the above described easement to Dring/Asaro.

6.      Section 6 of the Settlement Agreement provides that "The Property Owners on the one hand; and Dring/Asaro on the other hand do hereby release the other party and such party's predecessors in title, successors and assigns from any and all claims arising out of or relating to the

17

Lawsuit and the Western Shore Strip including but not limited to claims for compensatory damages, punitive damages, trespass, attorneys' fees, or costs of court."

7.    Section 8 of the Settlement Agreement specifically excepts only the rights and obligations of the parties under the Settlement Agreement from the terms of the release.

8.    Section 13 of the Settlement Agreement provides that it shall be construed and interpreted under the laws of the Commonwealth of Pennsylvania.

9.    Section 15 of the Settlement Agreement provides that "[a]ll Deeds and other instruments referred to herein shall be exchanged by the parties at a mutually convenience (sic) time within 30 days after obtaining the subdivision approval set forth in Section 2 hereof."

10.    The Settlement Agreement was signed by Joseph A. O'Brien, Esquire, as counsel to both ALO and the Property Owners.

11.    The Amendment provides that Section 15 of the Settlement Agreement is deleted and replaced with the following: "...All deeds and other instruments referred to herein shall be exchanged by the parties at a mutually convenient time within thirty (30) days after obtaining the subdivision approval."

12.    The Amendment was also signed by Joseph A. O'Brien, Esquire, as counsel to both ALO and the Property Owners.

13.    In his deposition on September 19, 2016, Mr. O'Brien acknowledged that he represented both ALO and the Property Owners (O'Brien deposition, page 11, lines 8 through 11) and that the Property Owners were bound by the Settlement Agreement as negotiated by his firm. (O'Brien deposition, page 14, lines 3 through 25). Mr. O'Brien admitted that the intention of Section 3 of the Settlement Agreement was that the easement in favor of the Property Owners was to be created in the quit claim deed to be delivered to ALO for the North Strip of West Shore Strip. (O'Brien deposition, page 34, lines 21 through 25, page 35, lines 1 through 25, page 36, lines 1 through 25, and page 37, lines 1 through 15). He further admitted that Section 15 provides that the parties were to exchange

> the deeds and instruments provided for in the Settlement Agreement at the same time. (O'Brien deposition, page 55, lines 16 through 25, and page 56, lines 1 through 3). The relevant passages from the O'Brien deposition are annexed hereto as Exhibit "3."

(Id.)

On October 10, 2018, Judge Caputo specifically ruled that in his deposition on September 19, 2016, Mr. O'Brien acknowledged that he represented both ALO and the Property Owners (See App. 492, lines 8 through 11) and that the WSPO were bound by the 2006 Agreement as negotiated by his firm. (See App. 493, lines 3 through 25). Mr. O'Brien admitted that the intention of Paragraph 3 of the 2006 Agreement was that the easement in favor of the WSPOs was to be created in the quit claim deed to be delivered to ALO for the North Strip of West Shore Strip. (See App. 496, lines 21 through 25, App. 497, lines 1 through 25, App. 498, lines 1 through 25, and App. 499, lines 1 through 15). He further admitted that Paragraph 15 provides that the parties were to exchange the deeds and instruments provided for in the 2006 Agreement at the same time. (See App. 500, lines 16 through 25, and App. 501, lines 1 through 3). The foregoing admissions served as the basis for (1) determination that the 2006 Agreement did not require that Dring provide an easement directly to the WSPO and that WSPO was bound by its release of claims negotiated by Mr. Obrien. (App. 1-9, Mem. Op. at p. 1-9).

19

Based on the record below, Judge Caputo correctly granted Summary Judgement in favor of Dring.

## **ARGUMENT**

A. THE DISTRICT COURT PROPERLY HELD THAT DRING HAS NOT RECEIVED THE INSTRUMENTS OF CONVEYANCE THAT SHE WAS ENTITLED TO AND, THEREFORE, IS NOT OBLIGATED TO DELIVER A QUITCLAIM DEED SUBJECT TO A PERMANENT EASEMENT IN FAVOR OF WSPO, AND THIS HOLDING WAS NOT BASED UPON THE DOCTRINE OF FUTILITY ALONE, BUT RATHER THE SPECIFIC OBLIGATIONS CREATED BY THE 2006 AGREEMENT.

The 2006 Agreement does not require Dring to convey an easement directly to WSPO. Dring's only obligation was to convey to *ALO* a quit claim deed subject to an easement in favor of the WSPO under Paragraph 3. (See generally App. 86, App. 465-468 at ¶ 1-13 (SOF) and App. 933 (Response to SOF). WSPO admit without qualification, the following:

> 13.    In his deposition on September 19, 2016, Mr. O'Brien  acknowledged that he represented both ALO and the Property Owners (O'Brien deposition, page 11, lines 8 through 11) and that the Property Owners were bound by the Settlement Agreement as negotiated by his firm. (O'Brien deposition, page 14, lines 3 through 25). Mr. O'Brien admitted that the intention of Section 3 of the Settlement Agreement was that the easement in favor of the Property  Owners was to be created  in the quit claim deed to be delivered to ALO for the North Strip of West Shore Strip. (O'Brien deposition, page 34, lines 21 through 25, page 35, lines 1 through 25, page 36, lines 1 through 25, and page 37, lines 1 through 15). He further admitted that Section 15 provides that the parties were to exchange the deeds and instruments provided for in the Settlement

> Agreement at the same time. (O'Brien deposition, page 55, lines 16 through 25, and page 56, lines 1 through 3). The relevant passages from the O'Brien deposition are annexed hereto as Exhibit "3."

( Id. App. 468, SOF ¶13 and App. 933, Resp. SOF ¶1-13).

However, as the District Court properly held Dring's obligation to provide said deed to ALO never arose, because Dring did not receive the instruments of conveyance they were entitled to pursuant to Paragraph 5 of the 2006 Agreement. (See App. 1-6, Mem. Op. p. 1-6). Likewise, ALO repudiated the 2006 Agreement. Id.

As admitted by the WSPO's counsel (who signed the 2006 Agreement and the Amendment on behalf of the WSPO), and as repeatedly stated by the District Court in the October 18, 2018, Mem. Op. subject to this appeal, the intention of Paragraph 3 was that the easement in favor of the WSPO was to be created in the quit claim deed to be delivered to ALO, and all of the deeds and instruments provided for in the 2006 Agreement were to be exchanged, at the same time, pursuant to Paragraph 15. (See App. 465-468, ¶¶ 3 through 5, 9 through 13 (SOF) ; and App. 933 at ¶¶ 3 through 5, 9 through 13 (Resp. SOF), and App. 86-92, 2006 Agreement and 2007 Amendment).[8]

---

[8] An attorney's statement made within the scope of his authority is an admission by the party he represents. See U.S. v. Catena, 500 F.2d 1319, 1327 (3d Cir. 1974); Feld v. Primus Technologies Corp., 97 Fed. R. Evid. Serv. 777, 2015 WL 2357082 (M.D. 2015). See also Fed. R. Evid. 801(d)(2)(D). (A statement

The District Court did not rely on the doctrine of futility to make the foregoing factual determinations. The only mention of the doctrine of futility in the entirety of the ten (10) page opinion subject to this appeal (App. 5-6, Mem. Op. 5-6) is provided as background and incorporated by reference from the Opinion in <u>Dring v. Ariel Land Owners, Inc.</u>, No. 3:15-CV-00478, 2018 WL 3934623 (M.D. Pa. Aug. 16, 2018), <u>aff'd on other grounds,</u> 782 F. App'x 133 (3d Cir. 2019).

"Futility" is not the sole basis or even the primary basis for the District Court's holding vis-à-vis the obligations created by the 2006 Agreement and more importantly the obligations **not** created by the 2006 Agreement. Nevertheless, the WSPO dedicate five (5) pages of their brief to arguing largely against a holding that is not part of the District Court's Opinion. This is simply an attempt to change the subject and not a genuine challenge to the lower court's holding.

The word futile only appears twice in the entire opinion, and is contained in the following excerpt:

> The most recent ruling concerning this dispute was my August 16, 2018 ruling in a related case between *Dring* and ALO. <u>Dring v. Ariel Land Owners, Inc.</u>, No. 3:15-CV-00478, 2018 U.S. Dist. LEXIS 139141, 2018 WL 3934623

---

offered against the party and made by the party's agent or employee on a matter within the scope of that relationship and while it existed is admissible against the party). Even if the 2006 Agreement did provide for the conveyance of an easement directly to the Property Owners, however, it would still be subject to the terms of the Section 15.

(M.D. Pa. Aug. 16, 2018). On cross-motions for summary judgment, I determined that while Dring had not yet performed on the settlement agreement by subdividing the Western Shore Strip,  Dring was excused from doing so because ALO had repudiated the agreement by, among other things, failing to obtain marketable title to Cardinal Lane. 2018 U.S. Dist. LEXIS 139141, [WL] at *7-8. ALO's repudiation, I held, "made it futile for Dring . . . to satisfy the condition precedent" of subdividing the Western Shore Strip into the North Strip and South Strip. 2018 U.S. Dist. LEXIS 139141, [WL] at *8. As such, Dring is "shielded from a claim that [she] breached the Settlement Agreement[,] because it would have been futile to satisfy the condition precedent." *Id.* I also held that Dring could not pursue a breach of contract claim against ALO because Dring's failure to subdivide the Western Shore Strip was not caused by ALO's repudiation. *Id.*

(App. 5-6, Mem. Op. at p. 5-6).

The District Court did, however, hold first that:

…ALO's repudiation  of the agreement 'discharges [Dring's] remaining duties to render performance.' Restatement (Second) of Contracts § 253(2) (1981). It logically follows that if Dring is excused from subdividing the Western Shore Strip into the North Strip and South Strip, she is also excused from delivering to ALO a deed to the North Strip subject to an easement to be granted in favor of the Property Owners.

(App. 5-6, Mem. Op. at p. 5-6)

Restatement (Second) of Contracts § 253(2) (1981), states following:

Effect of a Repudiation as a Breach and on Other Party's Duties
(1)

(2) Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance.

Restatement (Second) of Contracts § 253(2) (1981)

The District Court clearly and properly determined that (a) the 2006 Agreement required Dring to deed a portion of the strip to ALO and that the deed to ALO was to be made subject to easements in favor of WSPO; (b) the ALO in a separate instrument was to deed an easement over Cardinal Lane to Dring; (c) ALO by separate instrument was to provide Dring with 4 lake rights; (d) ultimately, years after the 2006 Agreement was signed, ALO determined that it could not and would not be able to grant an easement over Cardinal Lane, because it did not own Cardinal Lane, though it warranted title to same in Paragraph 5 of the 2006 Agreement; (e) ALO told Dring that it lacked title to and the ability to grant an easement over Cardinal Lane; (f) the deed from Dring to ALO for the strip and the easement to Dring from ALO for Cardinal Lane, and the documents granting Dring the 4 Lake Rights were all to be exchanged simultaneously; (g) the breach and inability to perform by ALO excused the requirement that Dring grant the ALO a deed over the strip; (h) WSPO admitted that the 2006 Agreement and the intent of the 2006 Agreement did not require Dring to directly grant easements to the WSPO; and (i) given the requirement of simultaneous exchange of documents and instruments any

obligation vis-à-vis the deed to ALO containing easements in favor WSPO cannot and will never arise.  (See generally, App, 1-9, Mem. Op.).

These facts, as set forth by the District Court led to the above stated holding that (1) repudiation by ALO excused and extinguished Dring's obligation to grant the deed to ALO; and (2) the District Court also held that:

> Second, Dring's duty to perform is excused under the constructive condition of exchange, which provides "substantial performance of one party's obligations under a contract is deemed an implied condition to the other party's duty to perform under the contract." Marsa v. Metrobank for Sav., F.S.B., 825 F. Supp. 658, 665 n.7 (D.N.J. 1993) (citing E.A. Farnsworth, *Contracts*, § 8.9 (2d ed.  1990)). Under this doctrine, ALO's failure to substantially perform means the implied condition to Dring's duty to perform has not been triggered. Either way, Dring's Section 3 obligations have been excused because of ALO's breach.

(App. 6-7, Mem. Op. 6-7).

Despite all of the foregoing analysis and detail by the District Court, the Appellants somehow, found it possible to include this statement in their Brief before this Honorable Court: "But the District Court did not explain how ALO's purported repudiation which excused Dring from subdividing the West Shore Strip, also justified Dring's failure to grant the West Shore Property Owners an easement over the North Strip." (App. Brief at p. 22,  App. D.E. 63 at p. 32).  In Dring II, the District Court held that (a) Dring was excused from granting a deed to ALO because ALO

repudiated, but (b) Dring could not pursue contractual damages against ALO for ALO's breach by repudiation, because Dring had not satisfied the condition precedent (subdivision of the strip) that would have allowed Dring to compel performance or seek damages from ALO. See Dring v. Ariel Land Owners, Inc., No. 3:15-CV-00478, 2018 WL 3934623 (M.D. Pa. Aug. 16, 2018), aff'd on other grounds, 782 F. App'x 133 (3d Cir. 2019).

The sole and exclusive agreed upon method for the creation of the easement in favor of WSPO was by quitclaim deed to ALO subject to easements in favor of WSPO. Thus, the District Court held, in part, the following:

> … I cannot rewrite the agreement to shift the forfeiture from the Property Owners to Dring when ALO is the only party in breach.

(App. 5-6, Mem. Op. at p. 5-6).

The District Court was correct, in could not rewrite the 2006 Agreement. It is respectfully submitted that this Court should not rewrite the 2006 Agreement either.

B. THE COURT BELOW PROPERLY DETERMINED THAT THE WSPO DO NOT HAVE A PRESCRIPTIVE EASEMENT CLAIM, BECAUSE THE RELEASE OF A CLAIM FOR PRESCRIPTIVE EASEMENTS IS BINDING ON THE WSPO.

   i.   WSPO Did Not Raise The Issue Or Legal Theory Of Mutual Releases Creating A De Facto Easement Before The District Court Below, And Are Prohibited From Raising This New Legal Theory On Appeal.

The so-called "effective easement" or "de facto easement" argument contained for the first time in WSPO's Appellate Brief does not exist below. At no point in the history of the proceedings prior to Judge Caputo's decision on October 10, 2018 or in the prevailing party/legal fees briefing that followed, did WSPO even suggest, let alone raise the theory, that WSPO's release of Dring or Dring's release created a "de facto easement." Put another way, for the years that this matter was litigated in the District Court prior to the instant appeal, at no point did WSPO argue that the release language by which WSPO released all claims for prescriptive easements, somehow created a "de facto easement," only of course, according to WSPO's argument, when read in conjunction with the release from Dring.

WSPO did not make this argument below, at all, and therefore it is not properly before this Court on appeal. Why didn't WSPO make this argument below? First, WSPO did not make this argument below, because it makes no sense. Second, WSPO did not make this argument below, because Count II of the WSPO's operative Complaint was for prescriptive easements over the strip. (See generally, App. 314-357, Pls.' Amend. Complaint).  Count I of WSPO's operative Complaint sought to compel Dring to grant express easements in favor of WSPO. (Id.)

It is respectfully submitted, that if the 2006 Agreement created an undefined "easement" in and of itself, then there would have been no need for WSPO to bring a claim for prescriptive easements or to attempt to compel the grant of express

easements. Nevertheless, this argument simply is not properly before this Honorable Court, because it was never raised by the Appellants before the District Court. Rather, below, the WSPO argued that there was no release at all; that Dring was estopped from enforcing the release; that Dring failed to plead release as a defense; and/or that enforcing the release would result in a disproportionate forfeiture. (See App. 955-958, Defendant's Brief in Opposition to Summary Judgment). The District Court universally rejected each argument actually raised by the WSPO in opposition to Dring's Motion for Summary Judgment below. (App. 6-9, Mem. Op. at p. 6-9).

This Court has consistently held that it will not consider issues that are raised for the first time on appeal. In <u>Newark Morning Ledger Co. v. United States</u>, 539 F.2d 929, 932 (3d Cir. 1976), this Honorable Court held as follows:

> We generally refuse to consider issues that are raised for the first time on appeal. <u>Sachanko v. Gill</u>, 388 F.2d 859, 861 (3d Cir. 1968); <u>Tromza v. Tecumseh Products Co.</u>, 378 F.2d 601, 604 (3d Cir. 1967); <u>Mirkowicz v. Reading Co.</u>, 84 F.2d 537, 538 (3d Cir. 1936). We are familiar with the position of the Supreme Court that in horrendous cases where a gross miscarriage of justice would occur, the practice should be relaxed. <u>Hormel v. Helvering</u>, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1940). But this is not such a case. Not only did the [Appellant], in pursuing its summary judgment, <u>fail to raise the new theory it now proposes</u>, but it also <u>failed to raise it in defense of the [Appellees']</u> <u>motion for summary judgment</u>.

<u>Newark Morning Ledger Co. v. United States</u>, 539 F.2d 929, 932 (3d Cir. 1976).

Judge Caputo ruled on the Motion for Summary Judgment based on the record before the District Court. Judge Caputo did not consider and did not rule on the theory now espoused by the WSPO for the first time on appeal. As such, this is not a theory properly before this Honorable Court. See, e.g., Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994); citing, Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1115 (3d Cir.1993); In re American Biomaterials Corp., 954 F.2d 919, 927–28 (3d. Cir.1992); Frank v. Colt Industries, Inc., 910 F.2d 90, 100 (3d Cir.1990); Flick v. Borg–Warner Corp., 892 F.2d 285, 287–88 (3d Cir.1989); Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir.1976).

Moreover, as is the case here, this general rule applies with greater force where the timely raising of such an issue would have permitted the parties to address this argument and related facts below. American Biomaterials, 954 F.2d at 927–28.

Indeed the application of the rule prohibiting new theories on appeal is routinely approved by the Supreme Court. The Supreme Court has explained that said rule is "essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues ... [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); see also Singleton v. Wulff, 428 U.S. 106,

120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (noting that, when an argument was raised for the first time on appeal, "[w]e have no idea what evidence, if any petitioner would, or could, offer in defense [of the argument]."). <u>Harris v. City of Philadelphia</u>, 35 F.3d 840, 845 (3d Cir. 1994).

    ii.    The WSPO Fail To Cite Any Legal Authority That Supports The "De Facto Easement" Theory Because None Exists, And Instead WSPO Cite Inapposite Authority That Undermines Their Arguments.

The cases cited by WSPO between page 24 and 28 of Appellants' Brief are inapposite to the matter presently before the Court. [Ap. D.E. 63 at p. 34-38]. Worse yet, none of those cases supports or even relates to the "de facto easement" theory that WSPO have cooked up on appeal. For example, WSPO offer the following quote from <u>Widmer Eng'g, Inc. v. Dufalla</u>, 837 A.2d 459 (Pa. Super. Ct. 2003) "When performance of a duty under a contract is due, any nonperformance is a breach." (App. Brief, App. D.E. 63 at p. 34-38).

Here, the District Court expressly held that the 2006 Agreement contains no language or provision that required Dring to deliver a written easement directly to WSPO. The District Court found, as supported *ad nauseam* by the testimony of Joseph O'Brien, Esquire, that the 2006 Agreement required Dring to grant a deed to ALO, subject to easements in favor of WSPO, where the easements were contained directly in the deed to ALO. However, (a) Dring's obligation to deliver the deed to ALO was excused by ALO's repudiation of its obligations under the

agreement; and (b) Dring's obligation to deliver a deed to ALO was never triggered, because all instruments were to be exchanged simultaneously. ALO did not own Cardinal Lane and therefore could not make good on its obligations under the 2006 Agreement, which is a prerequisite of performance becoming "due" from Dring at the contemplated simultaneous exchange.  (See generally App. 1-9, Mem. Op.).

WSPO  cite True R.R. Assocs., L.P. v. Ames True Temper, Inc., 152 A.3d 324 (Pa. Super. Ct. 2016), as support for the proposition that "When a breach is material, the other party can avoid its own contractual obligations under the agreement." (App. Brief, D.E. 63 at p. 36). However, this in no way supports the "de facto easement" theory. Moreover, this rule supports the District Court's holding that Dring was not obligated to convey a deed to ALO. The deed to ALO is the only deed or instrument that Dring was obligated to deliver to anyone under the 2006 Agreement, period.

The District Court found that the release by Dring and the release by WSPO satisfied the contractual obligation of each party to the other where WSPO and Dring are concerned. (App. 8-9, Mem. Op. at p. 8-9). Contrary to the contention of WSPO the District Court did not "decline to enforce the practical consequence of Dring's release of [her] sic trespass claims…" (App. Brief,  D.E. 63 at p. 37). First, there was no motion, claim or theory before the District Court by which WSPO claimed a right to continue to cross the West Shore Strip on a "de facto easement" mutual release

31

theory. Second, and perhaps beyond the inquiry here, at no point did the District Court determine the scope of the released trespass claims to be beyond those trespasses that had accrued to the date of the signing of the document. The District Court was never asked by WSPO to rule on the scope and nature of the release by Dring in terms of time (when and what claims were released) or in terms of scope of use (did the release of trespass claims encompass a release of any and all imaginable use and/or occupation of the strip by the WSPO,  and if not, what if any limitations applied to the scope of the release). The District Court simply held that both parties released claims and that the releases were adequate bilateral consideration. The District Court held specifically that WSPO released the prescriptive easement claims that they attempted to assert in the instant litigation. The District Court did not rule that the trespass claims asserted in this  2015 action as a Counterclaim by Dring were released under the 2006 Agreement.

Below, the WSPO argued that equity barred the enforcement of the release of their claims for prescriptive easements that were expressly released in the 2006 Agreement. Now, on appeal, WSPO change tack and cite federal question authority (not Pennsylvania contract law or Pennsylvania law of equity) as somehow supporting their claim that the this Honorable Court should ignore the record, ignore

the proper holding of the court below and simply command Dring to issue easements to all of the WSPO forthwith.[9]

Indeed, had <u>all</u> parties performed <u>all</u> obligations, following the transfer by deed of the strip to ALO, there would have been no future or forward-looking trespass claim to be made by Dring, or in this case Dring's successor ALO, because the contemplated deed was to include and be subject to an easement in favor of WSPO.

The District Court correctly held that WSPO cannot state a claim for prescriptive easements because they released that claim under the 2006 Agreement. The District Court held, in part:

> Here, if anything, the Property Owners' consideration (their release) is directly apportioned to Dring's release, not Dring's conveyance to ALO of a deed subject to easements in the Property Owners' favor.

---

[9] <u>Brown v. Bd. of Educ. of Topeka, Kan.</u>, 349 U.S. 294, 75 S. Ct. 753, 99 L. Ed. 1083 (1955) ("Brown II"), cited by WSPO, followed the landmark Supreme Court holding in <u>Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kan.</u>, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873 (1954)("Brown I"). It is respectfully submitted that both of these decisions are important to the constitutionally protected rights of all students in the American public education system, and should be revered. However, neither Brown II nor Brown I, have any bearing on the equitable principles that this Court or the District Court need consider when interpreting a settlement agreement that concerns property rights between private parties at a lake used for recreation by those with nearby summer homes.  Likewise, <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 250, 113 S. Ct. 2063, 2065, 124 L. Ed. 2d 161 (1993), is factually and legally inapposite to the matter before this Court. While the facts and law of <u>Mertens</u> bear no resemblance to the matters before this Court, it bears noting that the Supreme Court declined to exercise these hypothetical equitable powers to simply invent a new right not contained in a federal statute.

> Section 6 of the agreement begins: "The Property Owners on the one hand; and Dring/Asaro on the other hand do hereby release the other party ...." (Doc. 64-1 at 4). The only mention of the easements which the Property Owners seek is in Section 3 of the agreement, which provides that Dring deliver "to ALO a quit claim *340 deed ... to the North Strip, subject to a permanent easement to be granted in favor of the Property Owners ...." (*Id.* at 2). That provision cannot be reasonably read to require Dring to convey easements separately to the Property Owners in exchange for their release, especially considering it was the parties' undisputed intent that all property rights to the North Strip were to be conveyed in a single document. Accordingly, the settlement agreement cannot be severed in the way the Property Owners want it to be severed.

(App. 8-9, Mem. Op. at p. 8-9).

It is respectfully submitted that this Honorable Court should affirm and not disturb the District Court's holding that WSPO released their claims for prescriptive easements. Likewise, this Court should not make a factual or legal determination concerning the release by Dring based on new arguments from Appellants raised for the first time on appeal.

## C. DRING IS THE PREVAILING PARTY PURSUANT TO THE 2006 AGREEMENT AND IS ENTITLED TO ATTORNEYS' FEES AS RULED BY JUDGE CAPUTO

Appellants argue that the attorneys' fee award against them should be vacated (1) because judgment should be entered in favor of the Appellants, the WSPOs; and (2) even if the judgment is not entered in favor of WSPOs, Dring is not the "prevailing party." Specifically, Appellants cite to Federal Rule of Civil Procedure

41(a) for the voluntary dismissal of Dring's trespass claim against the WSPOs which Appellants argue acted as an adjudication on the merits, and therefore it is "less clear" as to which party is the prevailing party.

Appellees disagree with Appellants' narrow interpretation of "prevailing" and argue that Judge Caputo's decision granting Appellees relief on their Motion for Summary Judgment makes Dring the "prevailing party" under Pennsylvania law and therefore, pursuant to the 2006 Agreement, it was proper to award Dring attorneys' fees.  Furthermore, Appellees argue, as they have previously, that the trespass action dismissed by stipulation was not the same claim as that which was dismissed by the previous action.  The plain matter of fact is that Dring successfully defended against all of  the WSPOs claims, thereby prevailing on the  main issues, and summary judgment was entered in favor of Dring on all of the WSPOs claims.

Settlement agreements are enforced in accordance with principles of contract law. Krebs v. United Refining Co. of Pennsylvania, 893 A.2d 776, 783 (Pa. Super. 2006); Yaros v. Trustees of the Univ. of Pennsylvania, 742 A.2d 1118, 1122 (Pa. Super. 1999).  Contractual fee shifting provisions are to be construed in accordance with their plain and ordinary meaning. Boro Constr., Inc. v. Ridley Sch. Dist., 992 A.2d 208, 220 (Pa. Cmwlth. 2010).

Appellees were clearly entitled to reasonable attorneys' fees and costs as they were the prevailing party in the instant matter.  Section 14 of the 2006 Agreement

states in part: "[t]he ***prevailing party*** in any such action shall be entitled to recover reasonable attorney's fees from the other party." (App. 89, 2006 Agreement, § 4) (***emphasis added***). In <u>Profit Wize Mktg. v. Wiest</u>, 812 A.2d 1270, 1274 (Pa. Super. 2002), the Pennsylvania Superior Court explained that "prevailing party" is "commonly defined as 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded,' " further stating that "[w]hile this definition encompasses those situations where a party receives less relief than was sought or even nominal relief, its application is still limited to those circumstances where the fact finder declares a winner and the court enters judgment in that party's favor." *Id.* at 1275-76 (*quoting* Black's Law Dictionary, 7th ed. at 1145).

Moreover, a failure to recover on a counterclaim does not make the defendant unable to recover its costs in defending an action. <u>Burgess v. Senior</u>, 64 Pa. D. & C. 167, 169 (Pa. Ct. Comm. Pl. 1945); <u>Stahl et al. v. Erie Delivery Co.</u>, 31 Pa. D. & C. 429, 437 (Pa. Ct. Comm. Pl. 1937). Courts have considered defendants to be prevailing parties despite the presence of counterclaims where plaintiffs are the initial aggressor in the action and where the defendant's counterclaims ought to be tried, based on factual overlap, in the same action. <u>Id.</u>; <u>see also</u> <u>Tyler v. O'Neill</u>, 112 Fed.Appx. 158, 161-63 (3d Cir. 2004) (holding, in a federal context, that defendant was still prevailing party where counterclaims involved the same issues as the claims brought against the defendant).

Here, Dring's counterclaim dismissal does not negate the District Court's finding that Dring is the prevailing party regarding the defense of WSPO's claims. Thus, Dring is entitled to attorney's fees. See Gardner v. Clark, 33 Pa. D. & C.3d 662, 664-665 (Pa. Ct. Comm. Pl. 1985) (holding that defendant was a prevailing party for successfully getting claims dismissed on a motion for summary judgment); Zavatchen v. RHF Holdings, Inc., 907 A.2d 607,  611(Pa. Super. Ct. 2006) (recognizing that prevailing on summary judgment could justify finding that defendants were prevailing parties); see also Lynn v. Smith, 664 F.Supp. 929, 929-30 (M.D. Pa. 1986) (holding that, federally, defendants can be prevailing parties if they prevail on a motion for summary judgment).  Further, the counterclaim brought by Dring arose out of the same facts as the WSPO's claims and will not disrupt the finding that the Dring is the prevailing party.

Appellants selectively quote Federal Rule of Civil Procedure 41(a)(1)(B) in their brief[10].  The full text states: "[e]ffect.  Unless the notice or stipulation states otherwise, the dismissal is without prejudice.  But if the Plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a ***notice of dismissal*** operates as an adjudication on the merits."  Fed. R. Civ. P. 41(a)

---

[10] This isn't the first time Appellants have selectively cited Fed. R. Civ. P. 41(a) to benefit themselves; Judge Caputo caught them doing the same thing in their Brief in Opposition to Summary Judgment. This tactic didn't work then and should not work now.  (*See* App. 19, Memo. Law Judge Caputo).

(*emphasis added*).    Rule 41(a) *does not* state that a stipulation of dismissal shall operate as an adjudication on the merits.

Appellants' argument regarding Rule 41(a) violates the spirit of the Rule. Judge Caputo aptly took notice of the fact that "Rule 41(a)(1) was intended to eliminate the annoying of a defendant by being summoned into court in successive actions and then, if no settlement is arrived at, requiring him to permit the action to be dismissed and another one commenced at leisure." Cooter & Gell, 496 U.S. 384, 397 (1990) (internal quotations and citations omitted).    (*See also*, App. 19, Memo. Summ. Judg.). As Judge Caputo noted, Dring did not initiate the instant suit nor did Dring endeavor to harass the WSPOs. The aim of Rule 41(a)(1) was to prevent misuse of the judicial process which Dring clearly has not done.

Appellees also erroneously contend that the previous lawsuit involved the same trespass claim as Dring's Counterclaim to the WSPOs' Amended Complaint. To the contrary, the trespass claims released by Dring pursuant to the 2006 Agreement were only those existing *at that time*; the 2006 Agreement did not release future trespass claims.  Dring's Counterclaim was filed on  December 23, 2015, more than nine  (9) years after the release of trespass claims in the 2006  Settlement Agreement, and alleged, among other things, that the WSPOs "have traversed, and continue to traverse upon  Asaro/Dring's property  without the permission of Asaro/Dring," constituting a "continuing and wrongful trespass upon and across the

property of Asaro/Dring." (App. 400, Dring Counterclaim to WSPOs Amended Compl.).

Quite simply, the Counterclaim voluntarily dismissed by Dring without prejudice in April 2019 (App. 11) was not the same claim as was dismissed pursuant to the 2006 Agreement. Therefore, the voluntary dismissal of the Counterclaim did not operate as an adjudication on the merits under Rule 41. Moreover, the Stipulated Order entered by this Honorable Court on April 23, 2019 (App. 11), which dismissed the Counterclaim without prejudice, specifically provided that:

> However, Defendant/Counterclaim Plaintiffs' claim for attorneys' fees, costs and expenses is specifically not dismissed, and the parties agree that Dring and Asaro may submit an application for an award of attorneys' fees, costs and expenses to the District Court within thirty (30) days of the approval of this Stipulation.

(App. 11). If the voluntary dismissal without prejudice would result in an adjudication against Dring on the merits, neither the Court nor the parties would have provided that Dring could nonetheless submit an application for an award of attorneys' fees, costs and expenses.

Therefore, Appellants did not prevail on Dring's trespass claims. Instead, Dring has established that Appellants are not entitled to an easement over, or prescriptive rights to cross or occupy, the West Shore Strip. Accordingly, Dring, as Appellees, are the prevailing parties and their recovery of reasonable attorneys' fees and costs was valid.

## <u>CONCLUSION</u>

For all of the foregoing reasons and for all of the reasons set forth in the District Court's Memorandum Opinions of October 10, 2018, and October 17, 2019, which are incorporated herein by reference, it is respectfully submitted that this Honorable Court should Affirm the District Court's entry of judgment in favor of Dring, and Affirm and sustain the District Court's award of attorneys' fees.

Respectfully submitted,

**CIPRIANI & WERNER, P.C.**

**/s/ Philip A. Davolos, III, Esq.**
Philip A. Davolos III (Id.# 210225)
415 Wyoming Avenue
Scranton, PA 18503
p.  570.347.0600
f.  570.347.4018
PDavolos@c-wlaw.com


**ROTHENBERG & CAMPBELL**

**/s/ Ryan P Campbell, Esq.**
Howard A. Rothenberg (Id.# 38804)
Ryan P. Campbell (Id.# 317838)
345 Wyoming Avenue, Ste. 210
Scranton, PA 18503
p. 570.207.2889
f.  570.207.3991
HRLaw01@gmail.com
HRLaw04@gmail.com

*Attorneys for Appellees Nancy Asaro*
*and Lori Dring*

## <u>CERTIFICATIONS</u>

The undersigned certifies as follows:

1.      I am a member in good standing of the Bar of the Third Circuit.

2.      This Brief complies with the page and word limitations of Fed. R. App. P. 32(a)(7)(A) and (B) in that it contains approximately 11,023 words, excluding the cover page, tables, signature block, and certifications.

3.      This document complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the typestyle requirements of Fed R. App. P. 32(a)(6) because the document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

4.      The text of the printed and electronic versions of the Brief are identical.

5.      The Trend Micro Smart Protection Network, Security Agent virus protection program is installed on the network where the electronic version of my Brief is located, and no viruses were detected.

Date: <u>February 15, 2022</u>                 <u>*/s/ Philip A. Davolos, III*            </u>

## <u>CERTIFICATE OF SERVICE</u>

I, Phillip A. Davolos, III, Esquire, certify that on this date, I electronically filed a true and correct copy of the foregoing *Brief of Appellees* using the Court's CM/ECF system which will send notification of such filing to the following counsel of record of Appellants:

**Thomas I. Vanaskie**
Stevens & Lee
425 Spruce Street, Suite 300
Scranton, PA 18503
570-212-2307
Email: tiv@stevenslee.com

**Peter J Adonizio , Jr.**
Stevens & Lee, PC
425 Spruce Street, Suite 300
Scranton, PA 18503
570-969-5372
Email: pja@stevenslee.com

**Joseph A O'Brien**
Oliver, Price & Rhodes
1212 South Abington Road
PO Box 240
Clarks Summit, PA 18411
570-585-1200
Fax: 570-585-5100
Email: jaob@oprlaw.com

Date: February 15, 2022                    */s/ Philip A. Davolos III*