Docket Nos. 19-2073 & 19-3582

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

MARJORIE M. GILLESPIE, et al.,

*Plaintiffs-Appellants*,

v.

LORI DRING and NANCY ASARO

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
No. 3:15-cv-950 (Hon. Matthew W. Brann)

_____

## REPLY BRIEF OF APPELLANTS MARJORIE M. GILLESPIE, ET AL.

**OLIVER PRICE & RHODES**

Joseph A. O'Brien (Id. No. 22103)
Jenna Kraycer Tuzze (Id. No. 324116)
1212 South Abington Road
P.O. Box 240
Clarks Summit, PA 18411
Phone: (570) 585-1200
Fax: (570) 585-5100
jaob@oprlaw.com
jmk@oprlaw.com

**STEVENS & LEE, P.C.**

Thomas I. Vanaskie (Id. No. 29063)
Peter J. Adonizio, Jr. (Id. No. 325990)
425 Biden Street
Suite 300
Scranton, PA 18503
Phone: (570) 969-5360
Fax: (570) 371-7360
thomas.vanaskie@stevenslee.com
peter.adonizio@stevenslee.com

*Attorneys for Plaintiffs-Appellants Marjorie M. Gillespie, et al.*

# <u>TABLE OF CONTENTS</u>

A. Jurisdictional Issues ............................................................................... 3

B. This Court Should Make Clear That the West Shore Property Owners
Hold an Easement as a Matter of Law Over the North Strip .......................... 5

   1. Failure to Consider the West Shore Property Owners' Easement
Argument Would Result in a Miscarriage of Justice ................................. 5

   2. Dring Unambiguously Released Their Trespass Claims in the
2006 Settlement Agreement ...................................................................... 9

C. Dring's Contractual Obligation to Deed an Easement to the West Shore
Property Owners Should Not be Excused by ALO's Failure to Perform
its Contractual Obligations Owed to Dring ................................................ 16

D. Dring is Not Entitled to an Award of Attorneys' Fees Because Dring is
Not the Prevailing Party ............................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Bagot v. Ashcroft,*
  398 F. 3d 252 (3d. Cir. 2005) .............................................................6, 8

*Barefoot Architect, Inc. v. Bunge,*
  632 F.3d 822 (3d Cir. 2011) ....................................................................7

*Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.,*
  877 F.3d 136 (3d Cir. 2017) ................................................................6–8

*Blasband v. Raies,*
  971 F.2d 1034 (3d Cir. 1992) ................................................................19

*Brown v. Haley,*
  355 S.E.2d 563 (Va. 1987) ......................................................................4

*Bucciarelli v. DeLisa,*
  691 A.2d 446 (Pa. 1997) ..........................................................................4

*Cohen v. Beneficial Indus. Loan Corp.,*
  337 U.S. 541 (1949)..................................................................................3

*Cordero v. Potomac Ins. Co. of Illinois,*
  794 A.2d 897 (Pa. Super. Ct. 2002)......................................................20

*Council of Alt. Pol. Parties v. Hooks,*
  179 F.3d 64 (3d Cir. 1999) ......................................................................8

*Covertech Fabricating, Inc. v. TVM Bldg. Prod., Inc.,*
  855 F.3d 163 (3d Cir. 2017) ....................................................................8

*Franki Found. Co. v. Alger-Rau & Assocs., Inc.,*
  513 F.2d 581 (3d Cir. 1975) ....................................................................7

*Freck v. I.R.S.,*
  37 F.3d 986 (3d Cir. 1994) ....................................................................19

*Fuller v. Wilkie,*
  No. 18-3839, 2019 WL 4044321 (Vet. App. Aug. 28, 2019) ............18

ii

*In re Grand Jury Proceedings (U.S. Steel-Clairton Works)*,
    525 F.2d 151 (3d Cir. 1975) ................................................................. 3

*Huber v. Taylor*,
    469 F.3d 67 (3d Cir. 2006) ............................................................... 7–8

*Loretangeli v. Critelli*,
    853 F.2d 186 (3d Cir. 1988) ................................................................. 8

*McKinney v. Gannett Co.*,
    817 F.2d 659 (10th Cir. 1987) ........................................................... 18

*Motel 6, Inc. v. Pfile*,
    718 F.2d 80 (3d Cir. 1983) ................................................................... 4

*Profit Wize Marketing v. Weist*,
    812 A.2d 1270 (Pa. Super. Ct. 2002).................................................. 20

*Russakoff v. Scruggs*,
    400 S.E.2d 529 (Va. 1991) ................................................................... 4

*Sprague v. Casey*,
    550 A.2d 184 (Pa. 1988)..................................................................... 19

*Selected Risks Ins. Co. v. Bruno*,
    718 F.2d 67 (3d Cir. 1983) ................................................................... 7

*Tri-M Grp., LLC v. Sharp*,
    638 F.3d 406 (3d Cir. 2011) ............................................................. 7–8

## Statutes

28 U.S.C. § 1332 ..................................................................................... 4

## Rules

Fed. R. Civ. P. 41 ................................................................................... 22

Fed. R. Civ. P. 60 ............................................................................... 3–4

## Other Authorities

Black's Law Dictionary, 6th Ed................................................................ 20

Black's Law Dictionary, 7th Ed....................................................................20

Merriam Webster's Collegiate Dictionary, 7th Ed. ...............................20

Restatement of Property § 476......................................................................4

Restatement (Second) of Contracts § 253(2)..........................................16

iv

The West Shore Property Owners fully performed their obligations under the 2006 Settlement Agreement to release their claims against Dring related to the West Shore Strip.[1]  However, absent a ruling from this court declaring that the West Shore Property Owners have an easement to cross the North Strip, the West Shore Property Owners have received *nothing* in return for performing their obligations under the 2006 Settlement Agreement.  It is unconscionable for Dring to assert that they are entitled to: (1) avoid deeding the West Shore Property Owners an easement; (2) defeat the West Shore Property Owners' prescriptive easement claim due to the mutual releases in the 2006 Settlement Agreement; and (3) preserve Dring's own trespass claim, despite the mutual release.  Such a result punishes the West Shore Property Owners for their performance under the 2006 Settlement Agreement and inflicts a miscarriage of justice for the West Shore Property Owners.

The West Shore Property Owners want to be put in the position they would occupy but for both ALO and Dring's repudiation of their contractual obligations *to each other*.  As Judge Caputo explained, the West Shore Property Owners fully performed under the 2006 Settlement Agreement by releasing Dring "from any and

---

[1] Appellants use the same references to the defined terms used in their opening Brief.

1

all claims arising out of or relating to the Prior action and the West Shore Strip. There was no material breach of the [2006 Settlement] [A]greement by *Plaintiffs* that would excuse Defendants from performance to them.  The only material breach Defendants have suggested was by ALO, not Plaintiffs."  [App. 267, Oct. 6, 2015 Memo. (emphasis in original)].

However, the practical effect of Judge Caputo's decision robs the West Shore Property Owners of the position they bargained for through the 2006 Settlement Agreement—the right to cross the North Strip.  Indeed, the West Shore Property Owners only agreed to release claims against Dring because they believed they were ensuring their rights to cross the North Strip, through deeded easement or otherwise.  The District Court was deprived of the opportunity to grant the West Shore Property Owners the relief to which they were entitled by the terms of the 2006 Settlement Agreement—the right to cross the North Strip—when Dring dismissed the trespass claims.  The West Shore Property Owners are urging this Court to put an end to this decades long conflict by doing that which is equitable and fair: declaring that the West Shore Property Owners have obtained the right to cross the North Strip to access Lake Ariel.

## A. JURISDICTIONAL ISSUES

As this Court is aware, the District Court's decision is "technically" not a final decision because Dring's trespass counterclaim was dismissed. [*E.g.*, Appellants' Br. pp. v–vi]. This Court requested, and the parties filed, Responses in both appeals regarding the finality of the District Court's Orders of October 10, 2018 and October 17, 2019 because Dring's trespass claim was purportedly dismissed without prejudice. The West Shore Property Owners submit that under a "practical rather than a technical construction," of finality, this Court has jurisdiction over the West Shore Property Owners' appeals.[2] *In re Grand Jury Proceedings (U.S. Steel-Clairton Works)*, 525 F.2d 151, 155 (3d Cir. 1975) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

After the initiation of this appeal and the filing of Appellants' Brief, the District Court adjudicated the West Shore Property Owners Rule 60(b)(4) Motion

---

[2] Under a technical construction of finality, this Court may lack jurisdiction because Dring's trespass counterclaim, based as it is on the same facts that existed at the time this action was brought, has not been adjudicated and Dring persists with their Damoclean threats of erecting a fence or pursuing trespass claims to block access to Lake Ariel. Dring continues to use its purported trespass claim to extort the West Shore Property Owners even though, as explained later, the significance of the voluntary dismissal of the trespass claim (the second time Dring has done so), amounts to an adjudication on the merits adverse to Dring. Thus, if the West Shore Property Owners do not prevail on the merits in this appeal, additional litigation is a foregone conclusion. Additional litigation will address the effect of the 2006 Settlement Agreement's mutual release as well as the effect of a restrictive covenant in the deeds from two colleges conveying the West Shore Strip to Dring. The restrictive covenant may create an easement by implication across

3

for Relief from Judgment, which raised the lack of complete diversity of

citizenship at the time this action was initiated.  [*See* App. 4691–4700, West Shore

Property Owners' Rule 60(b)(4) Motion and supporting Brief].  Chief Judge

Matthew Brann, after finding that a non-diverse plaintiff at the inception of this

action did indeed destroy subject matter jurisdiction, severed the non-diverse

plaintiff from the action to restore the District Court's subject matter jurisdiction

under 28 U.S.C. § 1332.[3]

---

the West Shore Strip in favor of the West Shore Property Owners.  *See generally* Restatement of Property, § 476, Comment a ("An easement created by implication arises as an inference of the intention of the parties to a conveyance of land. The inference is drawn from the circumstances under which the conveyance was made rather than from the language of the conveyance.").  As Judge Becker remarked in *Motel 6, Inc. v. Pfile*, 718 F.2d 80, 84 (3d Cir. 1983), "[t]he law of implied easements . . . is ultimately justified in terms of the imputed intention of the parties to the conveyance." *Accord Bucciarelli v. DeLisa*, 691 A.2d 446, 448–49 (Pa. 1997).  In this case, Dring and the Colleges knew of the West Shore Property Owners access to Lake Ariel across the North Strip, and the Colleges wanted to protect that access.  An imputed intention to create an easement to access a lake has been recognized in circumstances similar to those presented here.  *See, e.g.*, *Brown v. Haley*, 355 S.E.2d 563 (Va. 1987) (finding implied easement where the evidence showed that access to a lake was within the contemplation of the parties in entering into an agreement of sale, even though agreement did not expressly reserve an easement to access the lake); *Russakoff v. Scruggs*, 400 S.E.2d 529 (Va. 1991) (same).  If Dring attempts to block that access, the West Shore Property Owners will assert their rights flowing from the Colleges' deeds and the restrictive covenants contained in them.

[3] The West Shore Property Owners were compelled to raise the lack of subject matter jurisdiction through their Rule 60 Motion as their failure to do so could have allowed Dring to raise the same argument (albeit, with the parties arguing the opposite positions) even after this Court adjudicated this appeal.

4

## B.  THIS COURT SHOULD MAKE CLEAR THAT THE WEST SHORE PROPERTY OWNERS HOLD AN EASEMENT AS A MATTER OF LAW OVER THE NORTH STRIP

### 1.  Failure to Consider the West Shore Property Owners' Easement Argument Would Result in a Miscarriage of Justice

The District Court held that the West Shore Property Owners had released any and all claims they had against Dring relating to the 1999 Litigation or the West Shore Strip.  Even though the 2006 Settlement Agreement did not specifically provide that the West Shore Property Owners released prescriptive easement claims, the District Court concluded as such.  [*See* App. 88, 2006 Settlement Agreement § 6].  The District Court thus necessarily concluded, without explicitly stating, that Dring also released any trespass claims they could bring against the West Shore Property Owners or their successors and assigns.  In fact, "trespass" is specifically mentioned as a type of claim the parties agreed to release in the 2006 Settlement Agreement.  [*See id.* (". . . including but not limited to claims for compensatory damages, punitive damages, **trespass**, attorneys fees or costs of court.") (emphasis added)].

As a practical matter, then, if the West Shore Property Owners cannot bring suit for a prescriptive easement over the North Strip and Dring cannot bring suit for trespass over the North Strip against the West Shore Property Owners, then the West Shore Property Owners essentially have an easement over the North Strip. This outcome makes practical sense and is supported by the trial court's conclusion

that the consideration supporting the West Shore Property Owners' release of their prescriptive easement claims was not a deeded easement from Dring, but rather was Dring's release of trespass claims against the West Shore Property Owners.

Dring contends in their Brief that the Court should not consider the impact of Dring's release of their trespass claims against the West Shore Property Owners because the West Shore Property Owners are raising this issue for the first time on appeal.  [Appellee's Br. p. 27–29].  However, the West Shore Property Owners could not have asserted this argument before the District Court.  Before the District Court, the West Shore Property Owners argued that they did not release their prescriptive easement claims.  Only after Judge Caputo held that the West Shore Property Owners did in fact release their prescriptive easement claims (as consideration for Dring's release of trespass claims) could the West Shore Property Owners conceivably argue that Dring's release of trespass claims grants them an easement by law.

In any event, this Court has "discretionary power to address issues that have been waived."[4]  *Bagot v. Ashcroft*, 398 F. 3d 252, 256 (3d. Cir. 2005); *see also*

---

[4] Technically, the question is not whether the issue has been waived, but whether it has been forfeited.  In *Barna v. Board of School Directors of Panther Valley School District*, this Court explained the difference between an issue that was "waived" and an issue that was "forfeited."  877 F.3d 136, 146–47 (3d Cir. 2017).  Forfeiture means a "'failure to make the timely assertion of a right,' an example of which is an inadvertent failure to raise an argument."  *Id.* at 147 (citation omitted).

*Selected Risks Ins. Co. v. Bruno*, 718 F.2d 67, 69 (3d Cir. 1983) (noting that the decision to address a claim raised for the first time on appeal "is one of discretion rather than jurisdiction"). Although "failure to raise an issue before the District Court generally results in its waiver on appeal," *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006), "this rule is only a rule of practice and may be relaxed whenever the public interest or justice so warrants." *Franki Found. Co. v. Alger-Rau & Assocs., Inc.*, 513 F.2d 581, 586 (3d Cir. 1975) (citation omitted).

"[T]he waiver rule applies with greatest force 'where the timely raising of the issue would have permitted the parties to develop a factual record." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011) (quotation omitted). Here, all relevant evidence has been presented.

The Court of Appeals "will still address arguments raised for the first time on appeal in 'exceptional circumstances,' [as] 'the matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised *on the facts of individual cases.*'" *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011) (quotations omitted) (emphasis added).This Court has explained that it could consider "a pure question of law even if not raised below where refusal to reach the issue would

---

In contrast, waiver means "the 'intentional relinquishment or abandonment of a known right.'" *Id.* (citation omitted).

result in a miscarriage of justice or where the issue's resolution is of public importance." *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) (quoting *Bagot*, 398 F.3d at 256); *see Loretangeli v. Critelli*, 853 F.2d 186, 189–90 n.5 (3d Cir. 1988); *see also Huber*, 469 F.3d at 74 ("Indeed, we have been reluctant to apply the waiver doctrine when only an issue of law is raised."); *Covertech Fabricating, Inc. v. TVM Bldg. Prod., Inc.*, 855 F.3d 163, 172 n.4 (3d Cir. 2017) (holding that a purely legal question was appropriate for consideration for the first time on appeal because the resolution of the issue was in the public interest). Accordingly, "an argument omitted before the district court may nevertheless be considered [on appeal] where it 'is closely related to arguments that [the parties] did raise in that court.'" *Tri-M Group*, 638 F.3d at 417 (quoting *Bagot*, 398 F.3d at 256); *see Council of Alt. Pol. Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1999) ("The issue involved in this case concerns a pure question of law, and in the interest of avoiding further delay, we conclude that this case represents an appropriate instance for us to exercise our discretion and address the matter in this appeal.").

Here, a refusal to consider the West Shore Property Owners' easement argument will work a plain miscarriage of justice. Dring will be able to threaten (and, in fact, already has threatened) to assert trespass claims against the West Shore Property Owners. Judge Caputo's opinions make clear that Dring's release

8

of their trespass claims against the West Shore Property Owners provided the consideration for the West Shore Property Owners' release of their prescriptive easement claim. Although Dring cites case law for the proposition that the waiver doctrine is used to ensure the parties have the opportunity to offer relevant evidence, [Appellee's Br. p. 29], Dring has identified no evidence not of-record that the Court would need to consider on this issue. The only conclusion to be drawn from the facts is that the West Shore Property Owner, their successors and assigns, have the right to access Lake Ariel by crossing the North Strip. As such, to the extent the Court finds that the West Shore Property Owners somehow "forfeited" this issue by not presenting it to the District Court, this case presents the exceptional circumstance in which this Court should consider a purely legal issue.

### 2. Dring Unambiguously Released Their Trespass Claims in the 2006 Settlement Agreement

Section 6 of the 2006 Settlement Agreement unambiguously provides:

> The [West Shore] Property Owners on the one hand; and Dring/Asaro on the other hand do hereby release the other party and such party's predecessors in title, successors and assigns from any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip including but not limited to claims for compensatory damages, punitive damages, trespass, attorneys fees, or costs of court.

[App 88, 2006 Settlement Agreement, § 6].

9

The District Court held that the 2006 Settlement Agreement was non-severable "and represents a *mutual* release of each party's predecessors in title, successors and assigns from any and all claims arising out of or relating to the Lawsuit and the West[] Shore Strip . . . ." [*Id.* (emphasis added)]. Denying an easement to the West Shore Property Owners is fundamentally unfair to the West Shore Property Owners, whose only reason for agreeing to the 2006 Settlement Agreement was the promise of an easement over the North Strip. If the West Shore Property Owners performed their contractual duty to release their claims against Dring (as the District Court concluded), then Dring must perform its contractual duty and grant an easement in favor of the West Shore Property Owners.

The District Court record details how the West Shore Property Owners "have maintained substantial and attractive improvements on their waterfront areas. These improvements include walkways, patios, seawalls and docks. In all cases, the seawalls and docks are constructed within the [W]est [S]hore [S]trip." [App. 972, Aff. of Theodore Malakin ¶ 10]. The record shows that the West Shore Property Owners have continuously used Lake Ariel for both summer and winter recreational activities for generations. [App. 971–72, *Id.* ¶ 9]. The only way for the West Shore Property Owners to access the lake from their properties is by crossing the North Strip. The West Shore Property Owners would never have

agreed to the 2006 Settlement Agreement if it served to deprive them of their rights to pursue prescriptive easement claims to cross the North Strip, while not guaranteeing their ability to cross the North Strip and access the lake.

It bears reiterating that Dring only purchased the West Shore Strip during the course of the 1999 Litigation between Dring and ALO. Dring paid approximately $25,000 to purchase the West Shore Strip from two colleges that had become owners of the West Shore Strip through residuary clauses of wills.[5] Dring then filed a Third Amended Counterclaim to assert trespass claims against the West Shore Property Owners.

The West Shore Property Owners are innocent victims of a dispute between Dring and ALO.[6] Dring is unfairly trying to penalize the West Shore Property

---

[5] While claiming that they "own the West Shore Strip in fee and that is not in dispute by the parties," [Appellees' Br. p. 2], Dring neglects to mention the undisputed fact that their title is in fact encumbered by a significant restrictive covenant that precludes Dring from taking action with respect to the North Strip that would impair the West Shore Property Owners' access to Lake Ariel.

[6] Dring, without citing to the record, asserts:

> ALO's primary purpose is to exploit its control of access to Lake Ariel and charge annual fees for leases and "lake rights." It charges those fees and compels those leases by bullying and threatening some of its neighbors with litigation and providing special access and privileges to those select families connected to or in favor with its very closely held ownership.

11

Owners by frustrating the intent of the West Shore Property Owners—and

Dring—when executing the 2006 Settlement Agreement:  to provide the West

Shore Property Owners continued access to Lake Ariel by crossing the North Strip.

In an attempt to overcome the practical effect of the mutual releases in the

2006 Settlement Agreement, Dring now argues that they only released trespass

claims up to the date of the 2006 Settlement Agreement.  [Appellees' Br. p. 38].

Such argument contravenes the plain language of the 2006 Settlement Agreement.

Worse, in their Brief's recitation of Section 6 of the Settlement Agreement, Dring

inserts the words "accrued to that date," when such limitation does not appear in

Section 6.  [*Id.* p. 5 ("Dring dismissed its claims raised in <u>Dring I</u> against [the West

Shore Property Owners], and released its claims *accrued to that date, including the*

*prior trespass by* [the West Shore Property Owners].") (emphasis added)].

---

> Indeed, property owners near Lake Ariel have paid millions of dollars over the years in annual fees to ALO, and those fees serve two primary purposes: (1) to propagate vexatious litigation (such as the instant matter) and (2) to otherwise enrich ALO ownership and allow that small group to attempt to run Lake Ariel as their own personal fiefdom.

[Appellees' Br. p. 4].  Notably, ALO is not a party to this appeal, thus underscoring the fact that the West Shore Property Owners are caught in the middle of a dispute between Dring and ALO.

Section 6 makes clear that Dring released any and all *trespass* claims against the West Shore Property Owners, *their successors, and their assigns*. Dring now attempts to re-write Section 6 to mean that Dring only released "prior trespass" claims.

Dring cites to Section 9 of the 2006 Settlement Agreement, but that section actually defeats Dring's position. Section 9, in pertinent part, states:

> All claims against the [West Shore] Property Owners set forth in the Third Amended Counterclaim will be dismissed with prejudice . . . . This agreement shall not constitute a bar against or release of any existing or future rights, claims or causes of action held by or accruing in favor of Dring/Asaro, *except to the extent specifically released or to be dismissed as provided by this Agreement.*

[App. 88–89, 2006 Settlement Agreement, § 9 (emphasis added)].

Dring now contends that the last sentence of Section 9 means that Dring only released its claims against the West Shore Property Owners that had accrued as of the date of execution of the 2006 Settlement Agreement. [Appellees' Br. p. 32]. In fact, Dring argues,

> at no point did the District Court determine the scope of the released trespass claims to be beyond those trespasses that had accrued to the date of the signing of the document. The District Court was never asked by [the West Shore Property Owners] to rule on the scope and nature of the release by Dring in terms of time (when and what claims were released) or in terms of scope of use (did the release of trespass claims encompass a release of any and all imaginable use and/or occupation of the strip by the [West Shore Property Owners], and if not, what if any limitations

13

> applied to the scope of the release).   The District Court simply held that both parties released claims and that the releases were adequate bilateral consideration.

[*Id.*].

There was no need for the District Court to address matters concerning the scope of the release because it is clear.  Section 6 unambiguously provides that both Dring and the West Shore Property Owners released any and all claims against each other (and each other's successors and assigns) related to the prior litigation or the West Shore Strip.  This release explicitly includes trespass claims. Section 9 provides only that Dring did not release future rights or claims, "*except to the extent specifically released or to be dismissed as provided by this Agreement.*"  [App. 88–89, 2006 Settlement Agreement, § 9 (emphasis added)]. Section 6 is a specific release of any and all trespass claims against the West Shore Property Owners *and their successors and assigns*.  Thus, Dring "specifically released" any and all present and future trespass claims.

Judge Caputo's decisions wholly comport with this concept.  As Judge Caputo explained:

> Here, the language of the release is clear and unambiguous: Section 6 of the agreement provides that "[t]he Property Owners on the one hand; and Dring/Asaro on the other hand hereby release the other party ... from any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip including but not limited to claims for [damages], trespass, attorneys fees, or costs of court." (Doc. 64-1 at 4).

14

[App. 7–8, Oct. 10, 2018 Memo. pp. 7–8].  Judge Caputo clearly held that the parties executed a broad release of any and all claims related to the West Shore Strip.  The District Court specifically found that the consideration for the West Shore Property Owners' release was Ding's release of trespass claims against the West Shore Property Owners.  [App. 8, Oct. 10, 2018 Memo. p. 8 ("Here, if anything, the Property Owners' consideration (their release) is directly apportioned to Dring's release . . .")].  It is thus clear that Dring did release future trespass claims against the West Shore Property Owners.

The practical consequence of Dring's release of its trespass claims is that the West Shore Property Owners are entitled to an easement over the North Strip.  Accordingly, the West Shore Property Owners ask this Court to hold as a matter of law that, because Dring has released any trespass claim they may have had against the West Shore Property Owners, their successors and assigns, Dring is now obligated to grant an easement in favor of the West Shore Property Owners.  Such an equitable holding is the only way to implement the mutual intention of the West Shore Property Owners and Dring in executing the 2006 Settlement Agreement.

SL1 1777167v1 114592.00001

## C. DRING'S CONTRACTUAL OBLIGATION TO DEED AN EASEMENT TO THE WEST SHORE PROPERTY OWNERS SHOULD NOT BE EXCUSED BY ALO'S FAILURE TO PERFORM ITS CONTRACTUAL OBLIGATIONS OWED TO DRING

The District Court held that Dring was excused from deeding the West Shore Property Owners an easement due to *ALO's* repudiation of its obligations owed to Dring.  [App. 6, Oct. 10, 2018 Memo. p. 6].  The District Court essentially concluded that ALO's purported repudiation, which excused Dring from subdividing the West Shore Strip, also justified Dring's failure to grant the West Shore Property Owners an easement over the North Strip.

The District Court properly noted that Section 253(2) of the Restatement (Second) of Contracts provides that:  "Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance."  But § 253(2) does not provide justification for a party to be relieved of its duties owed to a third party under the same contract.  Put simply, the District Court's conclusion that ALO's repudiation excused Dring's performance of *an independent duty Dring owed to the West Shore Property Owners* is not compelled by § 253(2).

The West Shore Property Owners were the intended beneficiaries of Dring's promise to deed the West Shore Strip to ALO subject to an easement in favor of

16

the West Shore Property Owners.[7]  That ALO was found to have breached its duty

to convey an easement over Cardinal Lane could not relieve Dring of its obligation

to provide an easement across the North Strip to the West Shore Property Owners.

Dring owed independent duties to ALO, on the one hand, and to the West Shore

Property Owners on the other.  The District Court held that the West Shore

Property Owners performed their contractual obligations owed to Dring and

concluded that Dring received the consideration from the West Shore Property

Owners to which Dring was entitled: release of the West Shore Property Owners'

prescriptive easement claims.  Dring's reciprocal obligation is to provide an

easement across the North Strip in favor of the West Shore Property Owners.

Otherwise, the West Shore Property Owners receive nothing in exchange for

releasing their prescriptive easement claims.

In their Brief, Dring argues time and again that the West Shore Property

Owners have admitted (through the deposition of co-counsel Joseph A. O'Brien)

that the intent of the 2006 Settlement Agreement was that an easement in favor of

the West Shore Property Owners "was to be created in the quit claim deed

---

[7] Section 3 of the 2006 Settlement Agreement states in part:  "Dring/Asaro agree to
execute and deliver to ALO a quit claim deed of all of their right, title and interest
in the North Strip, subject to a permanent easement to be granted in favor of the
[West Shore] Property Owners for access over the North Strip and to maintain
docks and/or boathouses on the North Strip."  [App. 86, 2006 Settlement
Agreement, § 3].

delivered" by Dring to ALO for the West Shore Strip, and that the 2006 Settlement Agreement provided for Dring and ALO to exchange the deeds to the West Shore Strip and Cardinal Lane at the same time. [Appellees' Br. p. 18]. The West Shore Property Owners do not dispute this. However, the fact that the parties "intended" for the West Shore Property Owners' easement to be contained in a deed to the West Shore Strip does not change the fact that ALO, Dring, and the West Shore Property Owners intended for the 2006 Settlement Agreement to provide an easement to the West Shore Property Owners.

Fundamental maxims of equity jurisprudence support the West Shore Property Owners' entitlement to an easement across the North Strip. "The essence of equity jurisdiction has been the power . . . to do equity and to mold each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs *as well as between competing private claims*." *McKinney v. Gannett Co.*, 817 F.2d 659, 672 (10th Cir. 1987) (emphasis added). "The ability of a court to right a demonstrated wrong is intrinsic to the basic concept of equitable powers." *Fuller v. Wilkie,* No. 18-3839, 2019 WL 4044321, at *2–3 (Vet. App. Aug. 28, 2019).

Thus, "[one] who seeks equity must do equity." *Freck v. I.R.S.*, 37 F.3d 986, 996 (3d Cir. 1994); *Sprague v. Casey*, 550 A.2d 184, 188 (Pa. 1988). Dring sought a release of the West Shore Property Owners' prescriptive easement claim, and obtained that relief. Dring must now do equity by releasing the trespass claims against the West Shore Property Owners, and that can be accomplished in equity by decreeing that the West Shore Property Owners have an easement across the North Strip.

Another fundamental maxim of equity is that "'equity will not suffer a wrong without a remedy.'" *Blasband v. Raies*, 971 F.2d 1034, 1044 (3d Cir. 1992). Here, the West Shore Property Owners have been found to have released their prescriptive easement claim without receiving what they expected in return: an easement across the North Strip. That injustice should not be countenanced.

### D. DRING IS NOT ENTITLED TO AN AWARD OF ATTORNEYS' FEES BECAUSE DRING IS NOT THE PREVAILING PARTY

The 2006 Settlement Agreement provides that "[t]he prevailing party in any such action [involving the interpretation or breach of this Agreement] shall be entitled to recover reasonable attorneys' fees from the other party." [App. 89, 2006 Settlement Agreement, § 14]. The 2006 Settlement Agreement does not provide a definition of "prevailing party." As a result, the Court should look to the ordinary and plain meaning of "prevail" to discern the contractual intent of the

19

parties. *See Cordero v. Potomac Ins. Co. of Illinois*, 794 A.2d 897, 900 (Pa. Super. Ct. 2002).

Merriam Webster defines "prevail" as "to gain ascendency through strength or superiority; TRIUMPH." Merriam Webster's Collegiate Dictionary, 7th Ed. at 924. Similarly, Black's Law Dictionary defines "prevail" as "to obtain the relief sought in an action; to win a lawsuit . . . ." Black's Law Dictionary, 7th Ed. at 1206. Black's Law Dictionary also defines "prevailing party" as "[t]he party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention; the one in whose favor the decision or verdict is rendered and judgment entered." Black's Law Dictionary, 6th Ed., at 1188. The Pennsylvania Superior Court has noted that "prevailing party" is commonly defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . . Such a pronouncement does not accompany a compromise or settlement." *Profit Wize Marketing v. Weist*, 812 A.2d 1270, 1275–76 (Pa. Super. Ct. 2002).

Dring argues that they are entitled to attorneys' fees and costs pursuant to the 2006 Settlement Agreement because they prevailed on the West Shore Property Owners' breach of contract and prescriptive easement claims, and because the

West Shore Property Owners did not prevail on the trespass claims.  But Dring is not entitled to an award of attorneys' fees and costs for two reasons.

First, Dring is not the prevailing party because Dring did not fully prevail in the underlying action.  The West Shore Property Owners sued Dring for breach of contract and for prescriptive easements over the North Strip.  [App. 314–357, Amended Complaint].  Dring filed a counterclaim against the West Shore Property Owners for trespass over the North Strip.  [App. 384–410, Answer, Affirmative Defenses, and Counterclaim].  While Dring was granted summary judgment in their favor on the claims filed by the West Shore Property Owners, Dring did not receive a judgment in their favor on their trespass claims against the West Shore Property Owners.

While courts have held that failure to recover on a counterclaim does not, in every case, prevent a defendant from being a prevailing party and obtaining attorneys' fees, it is imperative in the instant matter not to underscore the importance of the trespass counterclaim to Dring.  The trespass claim is the sole claim Dring asserted against the West Shore Property Owners and it was used against the West Shore Property Owners in an aggressive but unsuccessful attempt to inhibit their access to Lake Ariel.  The West Shore Property Owners have continued to access Lake Ariel by crossing the North Strip, consistent with their right to do so.  Since Dring did not prevail on the trespass claim, but instead

21

dismissed that claim, the Court below erred in awarding Dring attorneys' fees and costs based upon the Settlement Agreement.

Second, pursuant to Federal Rule of Civil Procedure 41(a)(1), Dring's dismissal of the trespass claim, their second dismissal of the trespass claim, amounts to an adjudication on the merits adverse to Dring. Thus, the West Shore Property Owners are the prevailing parties on Dring's trespass claim.

Rule 41, which covers voluntary dismissal of actions, provides that "the plaintiff may dismiss an action without court order by filing a stipulation of dismissal signed by all parties," but also states that such dismissal "operates as an adjudication on the merit" "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim." Fed. R. Civ. P. 41. The situation contemplated by Rule 41 is the exact situation here. Dring had filed a trespass counterclaim against the West Shore Property Owners in the 1999 Litigation. They admit that they dismissed that claim: "After the 2006 Agreement was executed, Dring and WSPO dismissed their respective claims against each other in Dring I." [Appellees' Br. p. 5]. This dismissal was consistent with Section 9 of the 2006 Settlement Agreement, which provides "[a]ll claims against the [West Shore] Property Owners set forth in the Third Amended Counterclaim will be dismissed with prejudice." [App. 88, 2006 Settlement Agreement, § 9]. While Dring attempts to frame the trespass claims that were

dismissed per the 2006 Settlement Agreement and the trespass claims resulting in a Stipulation in 2019, as distinct and separate, the 1999 Litigation was between the same parties and dealt with the same claims for trespass against the West Shore Property Owners, and as a result, the dismissal here now operates as an adjudication on the merits of the trespass claims.

Therefore, the West Shore Property Owners prevailed on the trespass claim raised by Dring. Dring cannot be considered the prevailing party pursuant to the 2006 Settlement Agreement, as both parties in effect prevailed in successfully defending the claims against them. As such, the Court's October 17, 2019 Order awarding Dring $282,383.93 in attorneys' fees and costs should be reversed.

Dated:  March 15, 2022          Respectfully submitted,

**STEVENS & LEE, P.C.**

By:  *s/ Thomas I. Vanaskie*
     Thomas I. Vanaskie (Id. No. 29063)
     Peter J. Adonizio, Jr. (Id. No. 325990)
     425 Biden Street
     Suite 300
     Scranton, PA 18503
     Phone:  (570) 969-5360
     Fax:  (570) 371-7360
     thomas.vanaskie@stevenslee.com
     peter.adonizio@stevenslee.com

**OLIVER PRICE & RHODES**
     Joseph A. O'Brien (Id. No. 22103)
     Jenna Kraycer Tuzze (Id. No. 324116)
     1212 South Abington Road
     P.O. Box 240
     Clarks Summit, PA 18411
     Phone:  (570) 585-1200
     Fax:  (570) 585-5100
     jaob@oprlaw.com
     jmk@oprlaw.com

     *Attorneys for Plaintiffs-Appellants*
     *Marjorie M. Gillespie, et al.*

SL1 1777167v1 114592.00001

## <u>CERTIFICATE OF SERVICE</u>

I, Peter J. Adonizio, Jr., Esquire, certify that on this date, I electronically

filed a true and correct copy of the foregoing *Reply Brief of Appellants* using the

Court's CM/ECF system which will send notification of such filing to the

following counsel of record for Appellees:

Howard A. Rothenberg, Esq.         Phillip A. Davolos, III, Esq.
Ryan P. Campbell, Esq.             Cipriani and Werner, P.C.
Rothenberg & Campbell              415 Wyoming Avenue
345 Wyoming Ave., Suite 210        Scranton, PA 18503
Scranton, PA 18503                 PDavolos@c-wlaw.com
HRLaw01@gmail.com
HRLaw04@gmail.com


Date:  March 15, 2022              *s/ Peter J. Adonizio, Jr.*
                                   Peter J. Adonizio, Jr.

## <u>CERTIFICATIONS</u>

The undersigned certifies as follows:

1. I am a member in good standing of the Bar of the Third Circuit.

2. This Reply Brief complies with the page and word limitations of Fed. R. App. P. 32(a)(7)(A) and (B) in that it contains approximately 5,690 words, excluding the cover page, tables, signature block, and certifications.

3. This document complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

4. The text of the printed and electronic versions of the Reply Brief are identical.

5. The Microsoft Forefront Endpoint Protection virus protection program has been run on the electronic version of this Reply Brief, and no viruses were detected.

Date:  March 15, 2022              *s/ Thomas I. Vanaskie*